STATE of Wisconsin, Plaintiff-Respondent,

v.

Charles LAMAR, Defendant-Appellant-Petitioner.

Supreme Court

*No. 08AP2206–CR. Oral argument March 8, 2011.
—Decided June 29, 2011.*

2011 WI 50

(Also reported in 799 N.W.2d 758.)

For the defendant-appellant-petitioner there were briefs and oral argument filed by *Donna Hintze,* assistant state public defender.

For the plaintiff-respondent the cause was argued by *Eileen Pray,* assistant attorney general, with whom on the brief was *J.B. Van Hollen,* attorney general.

¶ 1. MICHAEL J. GABLEMAN, J. This is a review of a published decision of the court of appeals, *State v. Lamar,* 321 Wis. 2d 334, 773 N.W.2d 446. The court of appeals affirmed a decision and order of the Milwaukee County Circuit Court, Clare L. Fiorenza, Judge, denying Charles Lamar's (Lamar) post-conviction motion for additional sentence credit.[1]

¶ 2. Lamar originally pleaded guilty and was sentenced for aggravated battery and misdemeanor bail jumping, both as a habitual offender, for severely beating his girlfriend. Approximately one year later, Lamar filed a motion to withdraw his guilty plea on the aggravated battery as a habitual offender charge. The circuit court granted Lamar's motion and the sentence was vacated. Lamar subsequently pleaded guilty to aggravated battery and a second misdemeanor bail jumping charge.

¶ 3. Lamar contends that, pursuant to Wis. Stat. § 973.04 (2007–08)[2], he is entitled to sentence credit for the period between the date he began serving his original aggravated battery as a habitual offender sentence and the date he completed the initial confinement portion of his misdemeanor bail jumping as a habitual

---

[1] The Honorable Jeffrey A. Conen presided over Lamar's original sentencing proceedings. After Lamar's post-conviction motion to withdraw his guilty plea to aggravated battery as a habitual offender, the matter was transferred to the Honorable Clare L. Fiorenza, who sentenced Lamar the second time and issued the post-conviction decision and order.

[2] All subsequent references to the Wisconsin Statutes are to the 2007–08 version unless otherwise indicated.

offender sentence. Lamar further argues that the post-conviction decision and order of the circuit court denying him additional sentence credit violates his due process rights against double jeopardy.

¶ 4. We reject Lamar's interpretation of Wis. Stat. § 973.04 and conclude that, under *State v. Boettcher*, 144 Wis. 2d 86, 423 N.W.2d 533 (1988), Lamar is not entitled to additional sentence credit. We hold that an offender is not entitled to additional sentence credit pursuant to § 973.04 when (1) the vacated sentence was originally imposed concurrent to a separate sentence, (2) the separate sentence is not vacated, (3) the vacated sentence is reimposed consecutively to the non-vacated sentence, and (4) the time that the defendant requested was served in satisfaction of the sentence that was not vacated. Additionally, we conclude that Lamar is not entitled to additional sentence credit by virtue of the constitutional protection against double jeopardy.

## I. BACKGROUND AND PROCEDURAL HISTORY

¶ 5. On March 23, 2006, Lamar was arrested and held in custody for severely beating his live-in girl-friend, Patricia McGee. Ms. McGee suffered two skull fractures and two facial fractures as a result of the beating. Lamar was charged as follows: Count I, aggravated battery as a habitual offender, in violation of Wis. Stat. § 940.19(5) (2005–06); Count II, misdemeanor bail jumping as a habitual offender, in violation of Wis. Stat. § 946.49(1)(a) (2005–06); and Count III, misdemeanor bail jumping as a habitual offender, also in violation of Wis. Stat. § 946.49(1)(a) (2005–06).

¶ 6. In August 2006, Lamar and the State entered into a plea agreement. Pursuant to the plea agreement, Lamar pleaded guilty to Count I, aggravated battery as a habitual offender, and Count II, misdemeanor bail

jumping as a habitual offender. Also pursuant to the plea agreement, Count III, misdemeanor bail jumping as a habitual offender, was dismissed.

¶ 7. On September 15, 2006, the circuit court sentenced Lamar to a term of imprisonment of seventeen years on Count I, aggravated battery as a habitual offender, consisting of twelve years of initial confinement followed by five years of extended supervision. Lamar was also sentenced to a term of imprisonment of two years on Count II, misdemeanor bail jumping as a habitual offender, consisting of one year of initial confinement followed by one year of extended supervision. These two sentences were to be served concurrently to each other. The circuit court granted Lamar 177 days of sentence credit on both counts for time he spent in custody in connection with these charges from March 23, 2006 (the date of his arrest) to September 15, 2006 (the date of Lamar's sentencing for Count I, aggravated battery as a habitual offender, and Count II, misdemeanor bail jumping as a habitual offender).

¶ 8. On March 23, 2007, Lamar completed the initial confinement portion of his sentence on Count II, misdemeanor bail jumping as a habitual offender, and remained in custody on Count I, aggravated battery as a habitual offender.

¶ 9. On August 29, 2007, the trial court granted Lamar's motion to withdraw his guilty plea on Count I, aggravated battery as a habitual offender. Lamar's motion claimed he did not understand the penalties for aggravated battery as a habitual offender when he pled guilty to the charge. During the plea hearing, the circuit court had erroneously informed Lamar that the maximum penalty for aggravated battery as a habitual offender was nineteen years, when in fact the maximum penalty was twenty-one years.

¶ 10. After Lamar withdrew his guilty plea to Count I, aggravated battery as a habitual offender, the State was no longer bound by the plea agreement. Consequently, the circuit court reinstated Count III, the second count of misdemeanor bail jumping as a habitual offender.

¶ 11. Several months later, Lamar and the State entered into another plea agreement.[3] Pursuant to this second plea agreement, Lamar pled guilty to aggravated battery (Amended Count I) and misdemeanor bail jumping (Amended Count III). Unlike Lamar's initial plea agreement, neither guilty plea under the second plea agreement included the habitual offender penalty enhancer. Further, under the terms of the second plea agreement, Judge Conen recused himself from sentencing and the matter was transferred by judicial assignment to a different circuit court judge, Judge Fiorenza, for sentencing.

¶ 12. On January 3, 2008, Judge Fiorenza sentenced Lamar on Amended Count I, aggravated battery, and Amended Count III, misdemeanor bail jumping. Judge Fiorenza sentenced Lamar to a term of imprisonment of fifteen years on Amended Count I, aggravated battery, consisting of ten years of initial confinement followed by five years of extended supervision. Lamar was also sentenced on Amended Count III, misdemeanor bail jumping, to nine months confinement. The sentences for Amended Count I, aggravated battery, and Amended Count III, misdemeanor bail jumping, were to be served *concurrently* to each other, but *consecutively* to any other sentence. This meant that the sentences for

---

[3] The sentence imposed for Count II, misdemeanor bail jumping as a habitual offender, was unaffected by Lamar's withdrawal of his guilty plea on Count I and the second plea agreement entered into with the State.

Amended Count I, aggravated battery, and Amended Count III, misdemeanor bail jumping, were to be served, together, *consecutively* to the sentence for Count II, misdemeanor bail jumping as a habitual offender.[4] Judge Fiorenza granted Lamar 306 days of sentence credit. This sentence credit reflected the days spent in confinement between the time his initial confinement portion of his sentence for Count II, misdemeanor bail jumping as a habitual offender, ended on March 23, 2007, and before his January 3, 2008 sentences were imposed for Amended Count I, aggravated battery, and Amended Count III, misdemeanor bail jumping.[5]

¶ 13. Lamar petitioned the circuit court for an order granting him 189 days of additional sentence credit for the days he was in confinement between

---

[4] The length of Lamar's original sentence was for a term of imprisonment of seventeen years, consisting of twelve years of initial confinement followed by five years extended supervision. Because Count I and Count II were to be served concurrently, Count I was his controlling sentence. The length of Lamar's consecutive sentences for Amended Count I and Amended Count III is also for a term of imprisonment of seventeen years, consisting of eleven years of initial confinement (one year on Count II and ten years on Amended Count I), followed by six years of extended supervision (one year on Count II and five years on Amended Count I). Therefore, it is fair to observe that the duration of the sentences imposed by the second sentencing court resulted in the same duration as the sentences initially imposed by the original sentencing court.

[5] While Lamar was credited 306 days for the period between March 23, 2007, and January 3, 2008, this period of time is actually only 286 days. The record indicates this was a miscalculation by the circuit court. This miscalculation, which was to Lamar's benefit, does not impact our analysis in the instant case—that is, whether Lamar is entitled to an additional 189 days of sentence credit for the time he was in custody from September 15, 2006, to March 23, 2007.

September 15, 2006 (the date he began serving his sentence on Count I, aggravated battery as a habitual offender, and Count II, *misdemeanor bail jumping as a* habitual offender) and March 23, 2007 (the date Lamar completed the initial confinement portion of his sentence on Count II, misdemeanor bail jumping as a habitual offender). The 189 days of additional sentence credit Lamar requested were the days during which he was serving time for Count I, aggravated battery as a habitual offender, and Count II, misdemeanor bail jumping as a habitual offender. Lamar based his request on Wis. Stat. § 973.04, which states: "When a sentence is vacated and a new sentence is imposed upon the defendant for the same crime, the department shall credit the defendant with confinement previously served."

¶ 14. The circuit court denied Lamar's motion for additional sentence credit. Applying the holding of *State v. Boettcher,* 144 Wis. 2d 86, the circuit court ruled that sentence credit should not be granted for two sentences being served consecutively to each other. The court reasoned that because Amended Count I, aggravated battery, was sentenced *consecutively* to Count II, misdemeanor bail jumping as a habitual offender, Lamar was not entitled to credit for both sentences. Further, the court held that Wis. Stat. § 973.04 does not "supplant or preempt this basic and long-standing rule."

¶ 15. The court of appeals affirmed the circuit court's denial of additional sentence credit. *Lamar,* 321 Wis. 2d 334, ¶ 20. First, the court of appeals concluded that Wis. Stat. § 973.04 applies only to sentencing in cases where "a defendant is serving one sentence and that particular sentence is vacated." *Id.,* ¶ 9. The court looked at the history of the statute, finding it was enacted in response to *State ex rel. Drankovich v. Murphy,* 248 Wis. 433, 22 N.W.2d 540 (1946), where this

court held that if the petitioner was resentenced on the conviction he was challenging, he would lose sentence credit for all the years he had already spent in prison serving that sentence. *Lamar,* 321 Wis. 2d 334, ¶ 9 n.2.

¶ 16. The court of appeals explained that the days Lamar was seeking additional sentence credit for— against the sentence imposed on Count I, aggravated battery as a habitual offender—were the same days he was serving an uncontested sentence on Count II, misdemeanor bail jumping as a habitual offender. *Id.,* ¶ 9. The court reasoned that because Lamar was still serving his sentence on Count II for misdemeanor bail jumping as a habitual offender, he should not also receive credit for his Count I sentence for aggravated battery as a habitual offender. *Id.*

¶ 17. Second, the court of appeals determined that Wis. Stat. § 973.155(1) should be used to calculate Lamar's sentence credit. *Lamar,* 321 Wis. 2d 334, ¶ 10. The court disagreed with Lamar's argument that the statute does not apply. *Id.* The court pointed out that the circuit court properly applied § 973.155(1) in granting Lamar 306 days of sentence credit for time spent in custody after his initial confinement for Count II, misdemeanor bail jumping as a habitual offender, until the time he was resentenced on Amended Count I, aggravated battery. *Id.*

¶ 18. Further, the court of appeals reasoned that requiring the circuit court to grant Lamar credit for time spent serving his sentence on Count I, aggravated battery as a habitual offender, while *concurrently* serving his sentence on Count II, misdemeanor bail jumping as a habitual offender, "would effectively prohibit the later sentencing court from imposing a consecutive sentence." *Id.,* ¶ 12. To support this proposition, the court relied again on *State v. Boettcher,* 144 Wis. 2d 86, where credit

was granted on only one of multiple sentences being served consecutively. *Lamar*, 321 Wis. 2d 334, ¶ 11.

¶ 19. Third, the court of appeals addressed Lamar's claim that refusing to grant full credit for the time he served on Count I, aggravated battery as a habitual offender, violated his due process rights against double jeopardy. *Id.*, ¶ 13. Double jeopardy, the court explained, protects a person from multiple punishments for the same offense. *Id.* The court analyzed double jeopardy in the context of judicial vindictiveness and the imposition of more severe sentences. *Id.*, ¶¶ 14–16.

¶ 20. The court of appeals reasoned that, under *North Carolina v. Pearce*, 395 U.S. 711 (1969), and subsequent case law, if a judge cites reasons for imposing a more severe subsequent sentence, there is no finding of vindictiveness. *Lamar*, 321 Wis. 2d 334, ¶ 14 n.4. Further, the court noted that since *Pearce*, the interpretation of double jeopardy has evolved. *Lamar*, 321 Wis. 2d 334, ¶¶ 14–17. Specifically, the court of appeals explained that "[d]ouble jeopardy does not apply where a correction to an original invalid sentence results in a sentence increase." *Id.*, ¶ 17 (citing *State v. Martin*, 121 Wis. 2d 670, 677–78, 360 N.W.2d 43 (1985)). The court of appeals then applied the holding of *State v. Naydihor*, 2004 WI 43, 270 Wis. 2d 585, 678 N.W.2d 220, and concluded that, because Lamar's second sentencing did not result in an increase to his initial sentence, no double jeopardy violation occurred.

¶ 21. Lamar petitioned this court for review of the decision of the court of appeals. We granted the petition on October 27, 2010.

## II. STANDARD OF REVIEW

¶ 22. The first issue in this case requires us to determine whether the circuit court properly applied Wis. Stat. §§ 973.04 and 973.155 in denying Lamar an additional 189 days of sentence credit for the time he was in custody from September 15, 2006, to March 23, 2007. This issue requires the court to interpret §§ 973.04 and 973.155. Statutory interpretation is a question of law that this court reviews de novo. *State v. Johnson,* 2007 WI 107, ¶¶ 27–28, 304 Wis. 2d 318, 735 N.W.2d 505.

¶ 23. "[S]tatutory interpretation 'begins with the language of the statute. If the meaning of the statute is plain, we ordinarily stop the inquiry.'" *State ex rel. Kalal v. Circuit Court for Dane County,* 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110 (quoting *Seider v. O'Connell,* 2000 WI 76, ¶ 43, 236 Wis. 2d 211, 612 N.W.2d 659). We interpret statutory language "in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." *Id.,* ¶ 46. Where this process yields a plain meaning, the statute is not ambiguous and is applied according to this ascertainment of its meaning. *Id.* If the language is ambiguous, however, we look beyond the language and examine extrinsic sources of statutory interpretation, such as the legislative history of the statute. *Id.,* ¶ 50.

¶ 24. The second issue in this case is whether Lamar's protection against double jeopardy was violated by the circuit court's decision to deny Lamar's

547

motion for 189 days of additional sentence credit. "Whether an individual's constitutional right to be free from double jeopardy has been violated is a question of law that this court reviews de novo." *State v. Anderson,* 219 Wis. 2d 739, 746, 580 N.W.2d 329 (1998).

## III. DISCUSSION

¶ 25. Lamar raises two arguments on appeal. First, Lamar argues that, pursuant to Wis. Stat. § 973.04, he is entitled to an additional 189 days of sentence credit for the time he spent in custody from September 15, 2006, to March 23, 2007. Second, Lamar contends that the circuit court's decision and order denying Lamar's post-conviction motion for additional sentence credit violated his constitutional protection against double jeopardy. We address each argument in turn.

### A. Lamar Is Not Entitled To Additional Sentence Credit Pursuant To Wis. Stat. § 973.04

¶ 26. Lamar argues that, under Wis. Stat § 973.04[6], he is entitled to an additional 189 days of sentence credit for the time he spent in custody from

----

[6] Wisconsin Stat. § 973.04 states: "When a sentence is vacated and a new sentence is imposed upon the defendant for the same crime, the department shall credit the defendant with confinement previously served." As the court of appeals noted, Wis. Stat. § 973.04 directs the Department of Corrections, not the circuit court, to give credit for time served. The State does not contend that Lamar erred in petitioning the circuit court, rather than the Department of Corrections, for additional sentence credit pursuant to Wis. Stat. § 973.04. Accordingly, for the purposes of this appeal, we assume, without deciding, that Wis. Stat. § 973.04 applies to sentencing courts.

September 15, 2006 (the date Lamar was originally sentenced on Count I, aggravated battery as a habitual offender, and Count II, misdemeanor bail jumping as a habitual offender), to March 23, 2007 (the date Lamar completed the initial confinement portion of his sentence for Count II, misdemeanor bail jumping as a habitual offender). Lamar contends that, because he served a portion of his sentence for Count I, aggravated battery as a habitual offender, before the sentence was vacated, he is entitled to credit for the time he served on that sentence and Count II, misdemeanor bail jumping as a habitual offender, to be applied to the subsequent sentence imposed on Amended Count I, aggravated battery.

¶ 27. We disagree. Lamar seeks sentence credit for the time he was in custody from September 15, 2006, to March 23, 2007. During this period of time, Lamar was serving two sentences concurrently: (1) Count I, aggravated battery as a habitual offender, and (2) Count II, misdemeanor bail jumping as a habitual offender. On January 3, 2008, the circuit court sentenced Lamar on Amended Count I, aggravated battery, and Amended Count III, misdemeanor bail jumping. The circuit court ordered that Lamar serve these two sentences concurrently to each other, but *consecutive* to any other sentence. As the circuit court correctly noted, Lamar "received credit from September 15, 2006 to March 23, 2007 toward the service of his sentence on count two [bail jumping as a habitual offender]—a sentence that was not vacated during the prior postconviction proceedings."

¶ 28. In *Boettcher,* we held that a defendant is not entitled to receive dual credit on a consecutive sentence. *Boettcher,* 144 Wis. 2d at 87. "Credit is to be given on a day-for-day basis, which is not to be duplicatively credited to more than one of the sentences imposed to run consecutively." *Id.*; *see also State v. Jackson,* 2000 WI App

41, ¶ 19, 233 Wis. 2d 231, 607 N.W.2d 338 (internal quotations omitted) (noting that "[t]he core idea of *Boettcher* is that dual credit is not permitted where a defendant has already received credit against a sentence which has been, or will be, separately served.")

¶ 29. Under *Boettcher*, Lamar is not entitled to receive the 189 days of credit he is seeking because the sentences imposed on January 3, 2008, were ordered by the circuit court to be *consecutive* to the sentence previously imposed for misdemeanor bail jumping as a habitual offender.

¶ 30. Lamar argues that *Boettcher* does not apply to this case because *Boettcher* was interpreting Wis. Stat. § 973.155, and not Wis. Stat. § 973.04, in holding that dual credit should not be awarded for consecutive sentences. Specifically, Lamar argues that § 973.155 is inapplicable here because the statute has been construed to govern only the award of sentence credit for *pre-sentence* custody. Section 973.04, on the other hand, governs *post-sentencing* custody, which is what Lamar argues is at issue in this case.

¶ 31. We disagree. Wisconsin Stat. § 973.155(1) provides in relevant part:

> (1)(a) A convicted offender shall be given credit toward the service of his or her sentence for all days spent in custody in connection with the course of conduct for which sentence was imposed. As used in this subsection, "actual days spent in custody" includes, without limitation by enumeration, confinement related to an offense for which the offender is ultimately sentenced, or for any other sentence arising out of the same course of conduct, which occurs:
>
> 1. While the offender is awaiting trial;
>
> 2. While the offender is being tried; and

3. While the offender is awaiting imposition of sentence after trial.

(b) The categories in par. (a) and sub. (1m) include custody of the convicted offender which is in whole or in part the result of a probation, extended supervision or parole hold under s. 302.113(8m), 302.114(8m), 304.06(3), or 973.10(2) placed upon the person for the same course of conduct as that resulting in the new conviction.

. . . .

(3) The credit provided in sub. (1) or (1m) shall be computed as if the convicted offender had served such time in the institution to which he or she has been sentenced.

¶ 32. The plain language of Wis. Stat. § 973.155(1)(a)3. makes clear that the statute applies to credit for custody "[w]hile the offender is awaiting imposition of sentence after trial." The 189 days of additional sentence credit Lamar seeks were all served before the imposition of his second sentencing on January 3, 2008 —that is, while he was awaiting sentencing. Consequently, § 973.155, which was interpreted in *Boettcher* as prohibiting dual credit on consecutive sentences, applies here.[7]

---

[7] Lamar's proposed statutory framework, where Wis. Stat. § 973.155 applies only to the period of time Lamar spent in confinement prior to his original sentencing on September 15, 2006, ignores that Lamar was sentenced on two separate dates in this case—September 15, 2006, and January 3, 2008.

Lamar contends that the period of time after the initial September 15, 2006 sentencing is all post-sentence custody, and that subsequently Wis. Stat. § 973.04—rather than Wis. Stat. § 973.155—controls. Obviously, the time period after September 15, 2006, followed Lamar's initial sentencing, but Lamar over-

¶ 33. Lamar argues that applying Wis. Stat. § 973.155 and the *Boettcher* rule to the instant case effectively renders Wis. Stat. § 973.04 meaningless. As Lamar correctly notes, statutes are to be construed to avoid absurd or unreasonable results. *State v. Galvan,* 2007 WI App 173, ¶ 7, 304 Wis. 2d 466, 736 N.W.2d 890. Lamar contends that if we conclude that § 973.155 controls in this situation, we will effectively be acting as though the legislature did not intend to grant sentence credit for time served against a vacated sentence pursuant to § 973.04. The court of appeals did not address this argument, concluding that § 973.04 is inapplicable under the facts of this case. Specifically, the court of appeals interpreted § 973.04 as applying only in situations where "a defendant is serving one sentence and that particular sentence is vacated." *State v. Lamar,* 321 Wis. 2d 334, ¶ 9.

¶ 34. The State argues (and Lamar obviously agrees) that the court of appeals interpreted the scope of Wis. Stat. § 973.04 too narrowly. We agree. Neither the plain language of § 973.04 nor precedent supports the conclusion that the statute is meant to apply only to cases involving one sentence.

¶ 35. Instead, we conclude that Wis. Stat. §§ 973.04 and 973.155 are both applicable to the instant case. The operative language of § 973.04—that the defendant shall be credited "with confinement previ-

---

looks that this time period was also prior to the imposition of Lamar's second sentencing on January 3, 2008. It is post-sentence custody in regards to Lamar's September 15, 2006 sentencing, but it is pre-sentence custody in regards to Lamar's January 3, 2008 sentencing. Under the plain language of § 973.155, the statute clearly applies to this case. Accordingly, we are not persuaded by Lamar's argument that §§ 973.155 and 973.04 address mutually exclusive periods of Lamar's custody.

.

ously served"—must be interpreted in light of the nature of the particular sentences imposed. A court has the authority to "provide that any such sentence be concurrent with or consecutive to any other sentence imposed at the same time or previously." Wis. Stat. § 973.15(2).

¶ 36. Here, the circuit court ordered that Lamar's sentences for Amended Count I, aggravated battery, and Amended Count III, misdemeanor bail jumping, run *consecutive* to any other sentence. If the circuit court had ordered Lamar to serve his sentences for Amended Count I, aggravated battery, and Amended Count III, misdemeanor bail jumping, concurrently with Count II, misdemeanor bail jumping as a habitual offender, he would be entitled to all of the time he served on the original Count I charge for aggravated battery as a habitual offender. However, because the circuit court ordered the sentences for Amended Count I, aggravated battery, and Amended Count III, misdemeanor bail jumping, to be served consecutively to any other sentence, the sentence credit Lamar seeks was not "previously served" in satisfaction of the sentence for Amended Count I, aggravated battery, but only in satisfaction of the sentence for Count II, misdemeanor bail jumping as a habitual offender.[8]

---

[8] Judge Fiorenza ordered Lamar to serve his sentences for Amended Count I, aggravated battery, and Amended Count III, misdemeanor bail jumping, *consecutively* to Count II, misdemeanor bail jumping as a habitual offender. If we were to grant Lamar the additional sentence credit he seeks, we would be effectively nullifying Judge Fiorenza's order imposing consecutive sentences. Such a result would violate the plain language of Wis. Stat. § 973.15(2) ("the court . . . may provide that any such sentence be concurrent with or consecutive to any other sentence imposed at the same time or previously.").

██

¶ 37. In the instant case, the time for which Lamar seeks sentence credit was served on a separate, non-concurrent sentence. If Lamar received the sentence credit he seeks, he would receive dual credit from two consecutive sentences for the period from September 15, 2006, through March 23, 2007. As this court held in *Boettcher*, defendants are not entitled to dual credit on a consecutive sentence.[9] *See Boettcher*, 144 Wis. 2d at 87 ("Credit is to be given on a day-for-day basis, which is not to be duplicatively credited to more than one of the sentences imposed to run consecutively."). Accordingly, we conclude that Lamar received all of the sentence credit to which he is entitled.

¶ 38. The dissent argues that applying Wis. Stat. § 973.155 to the instant case is an unreasonable interpretation of the statute. Dissenting op., ¶ 12. Instead, the dissent adopts Lamar's interpretation of Wis. Stat. §§ 973.04 and 973.155, contending that § 973.04 controls in this case and § 973.155 is inapplicable. The dissent maintains that our holding "rejects reality," while the dissent's approach "honors the intent of both the original and second sentencing courts." *Id.*, ¶ 25. This is wholly inaccurate.

¶ 39. The dissent's approach does not honor the intent of the original and second sentencing courts; in fact, it entirely ignores the intent, and subverts the authority, of the second sentencing court in an attempt to honor the intent behind a sentence that was subse-

---

[9] This is in accord with the Special Materials appended to the criminal Wisconsin Jury Instructions, which provide that "An offender is in general not entitled to sentence credit under § 973.155 for custody that is being served in satisfaction of another unrelated criminal sentence." Wis. JI-Criminal SM-34A at 10 (1994).

quently vacated. The original sentencing court ordered Lamar to serve concurrent sentences for Count I and Count II. Subsequently, in response to Lamar's motion to withdraw his guilty plea on Count I, the Count I sentence was vacated.[10] To vacate means "[t]o nullify or cancel; make void; invalidate." *Black's Law Dictionary* 1435 (9th ed. 2009). This vacated sentence for Count I, imposed by the original sentencing court, is the exclusive focus of the dissent's argument.

¶ 40. The problem with the dissent's approach is that two courts sentenced Lamar, not one. After Count I was vacated—in other words, after it was nullified and no longer in effect—Lamar was resentenced on Amended Count I. The circuit court, pursuant to its authority under Wis. Stat. § 973.15(2), resentenced Lamar to serve his Amended Count I sentence consecutive to any other sentence.[11] It is the dissent that chooses to "reject reality," inexplicably concluding that the most reasonable manner of honoring the intent of the second sentencing court is to altogether disregard the court's statutory authority to impose consecutive sentences. We hold that the more effective way to honor the intent of the second sentencing court is to actually uphold the sentence it imposed, rather than disregard it.

---

[10] "When a judgment has been rendered and later set aside or vacated, the matter stands precisely as if there had been no judgment. The vacated judgment lacks force or effect and places the parties in the position they occupied before entry of the judgment." 47 Am. Jur. 2d *Judgments* § 714.

[11] "Firmly rooted in common law is the principle that the selection of either concurrent or consecutive sentences rests within the discretion of sentencing judges." Arthur W. Campbell, *Law of Sentencing* § 9:22 (3d ed. 2004).

¶ 41. The facts of this case are unusual, and consequently our holding is narrow. We hold that an offender is not entitled to additional sentence credit pursuant to Wis. Stat. § 973.04 when (1) the vacated sentence was originally imposed concurrent to a separate sentence, (2) the separate sentence is not vacated, (3) the vacated sentence is reimposed consecutively to the non-vacated sentence, and (4) the time that the defendant requested was served in satisfaction of the sentence that was not vacated.

### B. Double Jeopardy Principles Do Not Compel Awarding Lamar Additional Sentence Credit

¶ 42. Lamar next argues that double jeopardy principles compel crediting him with every day he served under his original aggravated battery as a habitual offender sentence.

¶ 43. The Fifth Amendment to the United States Constitution protects an individual from being twice put in jeopardy for the same offense. In *Benton v. Maryland,* 395 U.S. 784 (1969), this guarantee against double jeopardy was held enforceable against the states through the Fourteenth Amendment. The Wisconsin Constitution also guarantees protection from double jeopardy in Article I, § 8(1).[12] "Because the protection afforded by these provisions is coextensive, Wisconsin courts have traditionally treated them as one." *State v. Gruetzmacher,* 2004 WI 55, ¶ 21, 271 Wis. 2d 585, 679 N.W.2d 533.

---

[12] Article I, § 8(1), of the Wisconsin Constitution states, in relevant part, "no person for the same offense may be put twice in jeopardy of punishment . . . ."

¶ 44. The guarantee against double jeopardy encompasses three separate constitutional protections. *North Carolina v. Pearce,* 395 U.S. 711, 717 (1969). "It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." *Id.* at 717. Lamar contends that under this last protection—the protection against multiple punishments for the same offense—he is constitutionally entitled to the 189 days of additional sentence credit at issue in this case.

¶ 45. In *Pearce,* the United States Supreme Court cited the landmark case of *Ex parte Lange,* 85 U.S. 163 (1873), for the principle that double jeopardy protections are undoubtedly "violated when punishment already exacted for an offense is not fully 'credited' in imposing sentence upon a new conviction for the same offense." 395 U.S. at 717–18. Lamar argues that, if upheld, the rulings of the circuit court and court of appeals will be violating this venerable principle.

¶ 46. The court of appeals and the State fail to directly respond to Lamar's double jeopardy argument, focusing primarily on the fact that no evidence in the record suggests the circuit court was vindictive in the sentence it imposed on January 3, 2008.[13] As Lamar

[13] In *Pearce,* the United States Supreme Court held that, because the fear of judicial vindictiveness "may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process [] requires that a defendant be freed of apprehension of [] a retaliatory motivation on the part of the sentencing judge." *North Carolina v. Pearce,* 395 U.S. 711, 725 (1969). To ensure that the

understandably stresses, he has never alleged that the circuit court was acting vindictively. In fact, Lamar's double jeopardy argument has nothing to do with judicial vindictiveness. Lamar's argument instead contends that declining to credit Lamar for the time he served from September 15, 2006, to March 23, 2007, fails to fully credit Lamar for every day he was in custody for his Count I sentence for aggravated battery as a habitual offender. Lamar argues that failing to fully credit him for the time he was in custody during this period violates his constitutional protection against double jeopardy.

¶ 47. We are not persuaded by Lamar's argument. On January 3, 2008, the circuit court ordered that Lamar's Amended Count I sentence for aggravated battery be served *consecutively* to any other sentence. From September 15, 2006, to March 23, 2007—the time period for which Lamar is seeking additional sentence credit—Lamar was serving his Count I sentence *and* his Count II sentence for misdemeanor bail jumping as a habitual offender concurrently. Because the circuit court, during Lamar's second sentencing, ordered him to serve his sentences for Amended Count I, aggravated battery, and Amended Count III, misdemeanor bail jumping, *consecutively* to

---

sentencing judge does not have such a motivation, the *Pearce* court required that "whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear." *Id.* at 726. Subsequent case law has significantly narrowed the holding of *Pearce* to create a "presumption of vindictiveness" only in situations where "there is a reasonable likelihood that the increase in sentence is the product of actual vindictiveness on the sentencing authority." *Alabama v. Smith*, 490 U.S. 794, 799 (1989)(internal quotations omitted).

any other sentence, it would go against the order of the circuit court to credit Lamar with time he served before March 23, 2007 (the date Lamar completed his initial incarceration portion of his Count II sentence for misdemeanor bail jumping as a habitual offender).

¶ 48. This does not violate Lamar's constitutional protection against double jeopardy. In *State v. Amos,* 153 Wis. 2d 257, 450 N.W.2d 503 (Ct. App. 1989), the court of appeals faced a double jeopardy claim based on the trial court's revocation of its original award of 726 days of sentence credit. The court of appeals held that the elimination of sentence credit to which an offender is not statutorily entitled does not violate double jeopardy. 153 Wis. 2d at 281–82. The *Amos* court concluded that, "[I]n this case, the sentence was modified to eliminate . . . credit that [the defendant] was not entitled to." *Id.* at 282. Accordingly, double jeopardy was not implicated. *Id.*

¶ 49. Here, the circuit court, pursuant to Wis. Stat. §§ 973.04 and 973.155, properly denied Lamar's postconviction motion for additional sentence credit. Consequently, Lamar was not statutorily entitled to this additional sentence credit, and as the court of appeals held in *Amos,* we conclude that Lamar's protection against double jeopardy has not been violated.

¶ 50. From September 15, 2006, to March 23, 2007, Lamar received credit for the sentence he was serving for Count II, misdemeanor bail jumping as a habitual offender. We hold that the constitutional guarantee against double jeopardy does not require that a defendant receive sentence credit for every day served against a sentence when (1) the vacated sentence was originally imposed concurrent to a separate sentence, (2) the separate sentence is not vacated, (3) the vacated sentence is reimposed consecutively to the non-vacated

sentence, and (4) the time that the defendant requested was served in satisfaction of the sentence that was not vacated.

## IV. CONCLUSION

¶ 51. Lamar contends that, pursuant to Wis. Stat. § 973.04, he is entitled to sentence credit for the period between the date he began serving his original aggravated battery as a habitual offender sentence and the date he completed the initial confinement portion of his misdemeanor bail jumping as a habitual offender sentence. Lamar further argues that the post-conviction decision and order of the circuit court denying him additional sentence credit violates his due process rights against double jeopardy.

¶ 52. We reject Lamar's interpretation of Wis. Stat. § 973.04 and conclude that, under *State v. Boettcher,* 144 Wis. 2d 86, Lamar is not entitled to additional sentence credit. We hold that an offender is not entitled to additional sentence credit pursuant to § 973.04 when the vacated sentence was originally imposed concurrent to a separate sentence, that sentence is not vacated, the vacated sentence is reimposed consecutively to the non-vacated sentence, and the time that the defendant requested was served in satisfaction of the sentence that was not vacated. Additionally, we conclude that Lamar's constitutional protection against double jeopardy does not compel us to grant Lamar with additional sentence credit.

*By the Court.*—The decision of the Court of Appeals is affirmed.

¶ 53. SHIRLEY S. ABRAHAMSON, C.J. (*dissenting*). Circuit courts and the Department of Corrections deal with sentence credit every day in a variety of fact situations. Clarity and simplicity in computing sentence credit continues to escape us all. In July 2010, *State v. Carter,* 2010 WI 77, 327 Wis. 2d 1, 785 N.W.2d 516, a sentence credit case in which the State and the defendant agreed about the credit to be awarded, produced 5 opinions totaling more than 100 printed pages. Here we go once again!

¶ 54. In the present case, the dispute focuses on 189 days that the defendant served under his original sentence for aggravated battery. The majority opinion refuses to apply the clear text of Wis. Stat. § 973.04, renders § 973.04 surplusage, and violates Lamar's constitutional guarantee against double jeopardy. As a result of the majority opinion, Lamar, who has served 189 days in confinement for aggravated battery, will now serve those 189 days again for the same offense.[1] "If there is anything settled in the jurisprudence of England and America, it is that no man can be twice lawfully punished for the same offence."[2] I would apply Wis. Stat. §§ 973.04 and 973.155, and I would not punish Lamar twice for the same offense.

¶ 55. To help clarify the issue I set forth the timeline both in chart and bullet forms:

---

[1] As a result of the majority's interpretation, Lamar will serve 15 years plus 189 days as punishment for aggravated battery. Aggravated battery (Wis. Stat. § 940.19(5)) is a Class E felony, which carries a penalty of "a fine not to exceed $50,000 or imprisonment not to exceed 15 years, or both." Wis. Stat. § 939.50(3)(e). The majority's interpretation violates both the maximum penalty prescribed by the legislature and the double jeopardy guarantee.

[2] *Ex parte Lange,* 85 U.S. 163, 168 (1873).

| 3/23/06 | 9/15/06 | 3/23/07 | 8/29/07 | 1/3/08 |
|---|---|---|---|---|
| Presentence (In custody) | Sentencing #1 (In custody) | In custody | In custody | Sentencing #2 (In custody) |
| Ct. 1 | 12 yrs. IC 5 yrs. ES concurrent | IC | Withdraws plea IC | 10 yrs. IC 5 yrs. ES Concurrent to Ct. 3 Consecutive to all others |
| Ct. 2 | 1yr IC 1yr ES concurrent | Completes IC | Unaffected | |
| Ct. 3 | Dismissed | Unaffected | Reinstated | 9 months Concurrent to Ct. 1 Consecutive to all others |
| ←177 days→ | ←189 days→ | ←159 days→ | ←127 days→ | ← |
| | | ←----286 days*----→ | | |
| Credit granted on Ct. 2 only | Credit on Ct. 1 in dispute | Credit granted on Ct. 1 | Credit granted on Ct. 1 | |

IC= In custody Ct. 1: Aggravated battery
ES= Extended supervision Ct. 2: Misdemeanor bail jumping
 Ct. 3: Misdemeanor bail jumping

*Based on a miscalculation by the circuit court, the defendant was credited 306 days for this period of time. *See* majority op., ¶ 12 n.5. This miscalculation does not affect the 189 days that are at issue in the present case.

¶ 56. The following timeline more fully explains the chart:

- On March 23, 2006, Lamar was taken into custody for conduct leading to the aggravated battery and bail jumping charges.

- Lamar remained in custody for 177 days prior to his first sentencing.[3]

- On September 15, 2006, Lamar began serving his concurrent sentence for Count 1 (aggravated battery as a habitual offender) and Count 2 (misdemeanor bail jumping as a habitual offender). This period amounted to 189 days of incarceration.

- On March 23, 2007 Lamar completed serving his initial confinement punishment for Count 2. He remained incarcerated under the sentence for Count 1.[4]

- On August 29, 2007, 159 days of incarceration later, Lamar successfully withdrew his guilty plea to Count 1. Count 3 was reinstated.

- Lamar remained incarcerated for an additional 127 days on Counts 1 and 3 until January 3, 2008, when he was sentenced on Counts 1 and 3.

---

[3] Lamar does not argue that he should be entitled to 177 days credit on his new sentence for Count 1. The 177 days were presentence time; he remained in custody awaiting the imposition of his first sentence. These days fall within Wis. Stat. § 973.155 and *State v. Boettcher,* 144 Wis. 2d 86, 423 N.W.2d 533 (1988), which is discussed later.

[4] Lamar asserts that "Wis. Stat. § 973.04 entitles him to credit for *all* confinement served under the original sentence for aggravated battery against the sentence later re-imposed by Judge Fiorenza for the same offense. This period is from the date of sentencing, September 15, 2006, to the date the sentence was vacated on August 29, 2007. However, applying Wis. Stat. § 973.155, the trial court granted credit for a portion of this time, from March 23, 2007 to August 29, 2007. Therefore the remaining time at issue is 189 days, from September 15, 2006 to March 23, 2007." Reply Brief of Defendant-Appellant-Petitioner at 1, n.2.

I

¶ 57. The only statute explicitly referring to sentence credit when a sentence is vacated is Wis. Stat. § 973.04. This specific statute governs the disputed 189 days in the present case. The statute mandates that the Department of Corrections credit a defendant with confinement previously served for the same crime. The statute provides as follows:

**973.04 Credit for imprisonment under earlier sentence for the same crime.** When a sentence is vacated and a new sentence is imposed upon the defendant for the same crime, the department shall credit the defendant with confinement previously served.

¶ 58. The statute has three elements: (1) a sentence is vacated, (2) a new sentence is imposed, (3) for the same crime.

¶ 59. The instant case satisfies these three elements. Lamar's original sentence for Count 1 (aggravated battery with habitual offender penalty) was vacated. On January 3, 2008, a new sentence for Count 1 (aggravated battery without habitual offender penalty) was imposed.[5] With the three statutory elements met in

---

[5] No one argues that the two charges labeled Count 1 are for different crimes. Although the original sentence for Count 1 was for the aggravated battery conviction with the habitual offender penalty, and the new sentence later imposed was for aggravated battery without the habitual offender penalty, both sentences arose out of the same crime—aggravated battery. For the purposes of determining the correct sentencing credit and the defendant's fundamental constitutional rights, it is immaterial that the increased penalty for habitual criminality under Wis. Stat. § 939.62 was used in the original sentence but not the other. The addition of the increased penalty does not change the

the present case, Wis. Stat. § 973.04 *requires* ("the department *shall*") that Lamar be credited with 189 days.

¶ 60. Wisconsin Stat. § 973.04 was enacted to be a post-sentencing statute. The statute is clear on its face. The present case meets the three elements. Accordingly, Lamar should be credited the 189 days he has previously served for the crime.

¶ 61. The majority does not adopt this view. Rather confusingly, the majority opinion grasps tightly to the idea that because Lamar's new sentence for Count 1 was imposed consecutively to any other sentence (that is, consecutive to Count 2 misdemeanor bail jumping), the 189 days Lamar spent incarcerated, chipping away at his original sentence for both Counts 1 and 2, never really happened. This post hoc interpretation rejects reality.

¶ 62. In effect, the majority is saying to Lamar: You know those 189 days that you (and everyone else) thought you were serving in prison for that aggravated battery as well as misdemeanor bail jumping? Well, they didn't happen. We're not going to count them for aggravated battery. We'll just start your punishment for that conduct over again from the beginning.

¶ 63. Yet during the 189 days at issue, both Lamar and the Department of Corrections viewed Lamar as serving time for aggravated battery as well as misdemeanor bail jumping. The majority opinion has retroactively changed what those 189 days represent. Under the majority's interpretation, the 189 days in custody are not "confinement previously served" for Count 1,

nature of the underlying crime as to permit an understanding that each sentence represented time served for a separate and independent crime. Both sentences were imposed for the same criminal conduct.

565

falling under Wis. Stat. § 973.04; the majority has instead morphed these 189 days into custody "awaiting sentence" on Count 1.

¶ 64. As I see it, this interpretation is unreasonable, if not absurd. How can the court retroactively change the basis upon which a person was incarcerated when a new sentence for the same crime is subsequently imposed?

¶ 65. In future cases, when a sentence is vacated, the majority allows a defendant's confinement for the vacated sentence to be recast as "presentence time" and governed by Wis. Stat. § 973.155. Thus the majority's interpretation seems to render Wis. Stat. § 973.04 surplusage.[6]

## II

¶ 66. Casting Wis. Stat. § 973.04 aside, the majority opinion turns to § 973.155(1)(a)3., a more general statute governing sentence credit.[7] This statute governs credit for presentence confinement and provides as follows in pertinent part:

> 973.155 **Sentence credit.** (1) (a) A convicted offender shall be given credit toward the service of his or her sentence for all days spent in custody in connection

---

[6] Perhaps the majority is limiting the application of Wis. Stat. § 973.04 to cases in which the second sentence (imposed after the first sentence is vacated) is concurrent with all charges in the first sentence. That interpretation reads many words into the simple, easy-to-apply-as-written text of § 973.04.

[7] Wisconsin Stat. § 973.155 was patterned after 18 U.S.C. § 3568 (1977), which is entitled "Effective date of sentence; credit for time in custody prior to the imposition of the sentence." Wisconsin Stat. § 973.155, like 18 U.S.C. § 3568, addresses *presentence* custody.

with the course of conduct for which sentence was imposed. As used in this subsection, "actual days spent in custody" includes, without limitation by enumeration, confinement related to an offense for which the offender is ultimately sentenced, or for any other sentence arising out of the same course of conduct, which occurs:

1. While the offender is awaiting trial;

2. While the offender is being tried; and

3. While the offender is awaiting imposition of sentence after trial.

¶ 67. According to the majority opinion, Lamar falls within Wis. Stat. § 973.155(1)(a)3.: credit is given "for custody '[w]hile the offender is awaiting imposition of sentence after trial.' " Majority op., ¶ 32 (quoting Wis. Stat. § 973.155).

¶ 68. The majority explains that the 189 days in question amounts to time "[Lamar] was awaiting sentencing." The majority opinion views the 189 days as "served before the imposition of his second sentencing on January 3, 2008—that is, while he was awaiting sentencing." Majority op., ¶ 32.

¶ 69. The problem with this approach is that the 189 days in question were not days Lamar spent in custody awaiting for his new sentence for Count I. These 189 days were days spent in prison under a sentence for aggravated battery before Lamar withdrew his guilty plea. Those 189 days were spent serving time for Count 1 concurrently with serving time for Count 2. The majority's recasting of the time Lamar served under a vacated sentence as "presentence time" is a fiction that misrepresents the reason Lamar was in prison.

¶ 70. Adhering to this fiction that the 189 days were presentence time, the majority opinion acknowl-

edges that Lamar is deserving of sentence credit for the 189 days presentence time under Wis. Stat. § 973.155. Nevertheless, the majority opinion declares that *State v. Boettcher*, 144 Wis. 2d 86, 423 N.W.2d 533 (1988), prohibits Lamar from receiving credit.

¶ 71. The majority opinion centers most of its rationale against granting Lamar sentence credit for the 189 days in question on the fact that the new sentence imposed for Count 1, after the original sentence was vacated, was ordered to run *consecutively* to any other sentence, namely consecutively to Count 2, misdemeanor bail jumping. This is where the majority's reliance on *State v. Boettcher* comes in. I turn to *Boettcher*.

¶ 72. In *Boettcher*, 144 Wis. 2d at 87, the court concluded that "dual credit is not permitted—that the time in custody is to be credited to the sentence first imposed—and that, where the sentences are consecutive . . . [c]redit is to be given on a day-for-day basis, which is not to be duplicatively credited to more than one of the sentences imposed to run consecutively."

¶ 73. The majority opinion errs in applying *Boettcher* to the 189 days. The majority opinion applies *Boettcher* while focusing on implementing the circuit court's second sentence for Count 1 as consecutive to the sentence for Count 2. In doing so, the majority opinion ignores—pays no heed to—the circuit court's original sentence for Count 1 to be concurrent with the sentence for Count 2.

¶ 74. Lamar applies *Boettcher* properly. Lamar does not dispute that the 177 days he remained in custody (March 23, 2006—September 15, 2006) before the first sentencing are presentence confinement days. As such, those 177 days should, because of the new consecu-

tive sentence, be credited under Wis. Stat. § 973.155 and *Boettcher* only to the sentence first imposed, namely the sentence for Count 2.

¶ 75. Lamar reasons, however, that the 189 days he served after the original sentencing for both Counts 1 and 2, which according to the original sentence run concurrently, are not presentence days, and do not fall within § 973.155 or *Boettcher.* I agree with Lamar's reasoning.

¶ 76. Lamar's interpretation comports with the texts of both statutes and *Boettcher.* Lamar gets credit for presentence confinement, in accordance with Wis. Stat. § 973.155. Applying *Boettcher,* he gets credit for the presentence confinement on only the sentence first imposed, namely Count 2. Because the new sentence was ordered consecutive to Count 2, the initial 177 days in custody are rightfully credited only to Count 2. But because Lamar's sentence on Count 1 was vacated and a new sentence was imposed for the same crime, under § 973.04 Lamar must get credit for the punishment he has already served for that crime, namely the 189 days he served under the original sentence for Count 1.

¶ 77. Lamar's interpretation, which I adopt, harmonizes Wis. Stat. § 973.04 and § 973.155, applies both statutes to the facts of the present case, applies the *Boettcher* rule, and honors the intent of both the original and second sentencing circuit courts. Accordingly, I would grant Lamar the 189 days sentence credit.

### III

¶ 78. My interpretation of the sentencing credit statutes does not raise a double jeopardy issue. I conclude that the majority opinion's failure to grant Lamar sentencing credit for the 189 days in question violates his constitutional guarantees against double jeopardy.

569

¶ 79. I join the majority (majority op., ¶ 45) in looking to *Ex parte Lange,* 85 U.S. 163 (1873), in which the United States Supreme Court wrote:

> If there is anything settled in the jurisprudence of England and America, it is that no man can be twice lawfully punished for the same offence. And though there have been nice questions in the application of this rule to cases in which the act charged was such as to come within the definition of more than one statutory offence, or to bring the party within the jurisdiction of more than one court, there has never been any doubt of its entire and complete protection of the party when a second punishment is proposed in the same court, on the same facts, for the same statutory offence.[8]

¶ 80. Lamar was incarcerated for the 189 days in question as punishment for his conduct in committing aggravated battery. He is now to be incarcerated as punishment for the same conduct, aggravated battery, without credit for the 189 days. The punishment exacted was not "fully 'credited' in imposing sentence upon a new conviction for the same offense."[9]

¶ 81. Lamar's fundamental constitutional rights have been violated by the majority's failure to grant sentence credit.

¶ 82. For the foregoing reasons, I dissent.

¶ 83. I am authorized to state that Justice ANN WALSH BRADLEY joins this dissent.

---

[8] *Ex parte Lange,* 85 U.S. 163, 168 (1873).

[9] *North Carolina v. Pearce,* 395 U.S. 711, 718–19 (1969), *overruled in part on other grounds by Alabama v. Smith,* 490 U.S. 794 (1989).