Juanita **BRYANT**, Petitioner-Appellee,

v.

**WARDEN, METROPOLITAN CORRECTIONAL CENTER OF NEW YORK CITY and United States Parole Commission, Respondents-Appellants.**

No. 279, Docket 85–2210.

United States Court of Appeals, Second Circuit.

Argued Oct. 16, 1985.

Decided Nov. 1, 1985.

Phylis Skloot Bamberger, The Legal Aid Society, Federal Defender Services Unit, New York City, for petitioner-appellee.

David R. Lewis, Asst. U.S. Atty., New York City (Rudolph W. Giuliani, U.S. Atty. for S.D.N.Y., Steven E. Obus, Asst. U.S. Atty, New York City, on brief), for respondents-appellants.

Before FRIENDLY, KAUFMAN and PRATT, Circuit Judges.

IRVING R. KAUFMAN, Circuit Judge:

■ Lost time, said Benjamin Franklin, is never found again.[1] Nonetheless, we are compelled today to deny relief to a prisoner who, due to an error by the United States Parole Commission, served almost ten months additional time on a parole violator term. In so doing, we reject the appellee's claim that she should be allowed to "bank" the extra months, then draw on the "banked" time to offset punishment imposed for a subsequent parole violation.

## I. BACKGROUND

This appeal stems from a series of federal parole violations. In 1973, appellee Juanita Bryant was sentenced by a federal court to a seven-year prison term for conspiracy to distribute controlled substances. One year later, Bryant was convicted of selling a controlled substance and sentenced to a consecutive one-year prison term. She was paroled on November 25, 1975, for the combined eight-year term. Five years and two months remained to be served on the sentences.

In 1977, while still on parole, Bryant was convicted in New York state court on narcotics charges and given a probation term. Then, in 1979, she pled guilty in the state court to criminal possession of a forged instrument. Upon her release from state custody in 1980, Bryant was taken into federal custody for violating the terms of her federal parole. The basis of her parole violation included: 1) the 1977 and 1979 state convictions, 2) her continued drug use, and 3) her failure to report to her federal parole officer between 1977 and 1979. The United States Parole Commission calculated the severity of Bryant's parole violations to be "very high," and her salient factor score to be 4. Accordingly, Bryant's reparole release guidelines were determined to be 48 to 60 months.[2] This decision was affirmed on both regional and national administrative appeal.

On June 18, 1982, the Regional Parole Commissioner reopened Bryant's case pursuant to 28 C.F.R. § 2.28(a),[3] and decided

---

**1.** B. Franklin, *Poor Richard's Almanac* (1748).

**2.** For each prospective parolee, the Commission determines both the seriousness of the parole violation (the "severity rating") and the risk of a subsequent parole violation (the "salient factor score"). Any particular combination of these two scores corresponds to a set of reparole guidelines. 28 C.F.R. § 2.20(b).

**3.** 28 C.F.R. § 2.28 permits the Regional Commission to "reopen a case at any time upon the receipt of new information of substantial signif-

that Bryant's severity rating should have been merely "high," rather than "very high."[4] This adjustment reduced Bryant's reparole guideline range from 48–60 months to 26–34 months. By that time, however, Bryant had already served 43 months and 25 days, exceeding the maximum applicable parole violator term by 9 months and 25 days.

Once more free on parole, Bryant was arrested eight months later for possession of a stolen United States Treasury check. She pled guilty in federal court and was sentenced to five years probation. A parole violation warrant was then issued, and Bryant was again taken into federal custody for violating the parole terms of her 1973 and 1974 convictions by reason of: 1) her most recent federal conviction, and 2) her failure to comply with drug aftercare parole conditions. Her parole was revoked, and the new reparole guideline range was determined to be 16 to 22 months.

At the hearing, the Commission examiners declined to credit Bryant for the additional 9 months and 25 days she had served on her first parole violator term. The examiners did consider the supplementary time served to be a mitigating circumstance, however, and balanced it against certain aggravating factors, such as Bryant's criminal convictions and her repeated parole violations. The examiners concluded the appropriate violator term for Bryant would be 20 months, toward the top but not at the top of her re-parole guidelines. Once more, the decision was affirmed by the regional and national appeals boards.

Thereupon, Bryant filed a petition for habeas corpus in the district court, and Judge Brieant granted the petition. He held the Parole Commission's refusal to credit Bryant for the full 9 months and 25 days on her second parole violation was

"unfair, to the extent of a denial of due process," and ordered Bryant released from custody. At the time of her release, 8 months and 16 days remained to be served on her second parole violation term. We do not agree with the district judge.

## II. *DISCUSSION*

We have noted that "[i]f a prisoner should serve time before trial which ultimately exceeds his sentence ... he may not use that time to offset a sentence imposed for an offense committed in the future." *McGinnis v. United States ex rel. Pollack,* 452 F.2d 833, 836 (2d Cir.1971). The principle that extra time served on a criminal sentence may not be "banked" is strongly rooted in the public policy that individuals should not be encouraged to commit crimes knowing they have a "line of credit" that can be applied against future sentences. *Id.; see also Bowen v. Murphy,* 693 F.2d 104, 105 (10th Cir.1982); *Miller v. Cox,* 443 F.2d 1019, 1021–22 (4th Cir.1971).

■ Bryant urges this Court, however, to hold the "no banking" rule inapplicable to parole violation cases. Indeed, the district court found merit in her argument that the "no banking" principle applies only to sentences imposed for two unrelated crimes. The judge stated that multiple parole violations, however, relate back to the same underlying crime—here, Bryant's 1973 and 1974 federal convictions. This distinction, while appearing to have surface plausibility, is in reality meaningless. Like criminal activities, parole violations should be discouraged; allowing an individual to bank time erroneously served for a parole violation, to the contrary, would encourage such infractions. Bryant's second parole violation was committed well after she had served her first parole violator term, and we find no reason to depart from the sound

icance favorable to the prisoner." The case was reopened pursuant to the urgings of petitioner's counsel, who pointed out the possible error in the earlier determination by letter and then, following the rejection of this request, instituted habeas corpus proceedings, which were ultimately dropped.

4. The reduction in Bryant's severity rating resulted from the Commissioner's conclusion that it had incorrectly evaluated the weight of the heroin in Bryant's possession at the time of her arrest. The weight of the substance had not been properly discounted for impurity.

logic of the cases holding that time served on an invalid sentence cannot be used to offset a sentence imposed for a future crime. Bryant thus has no basis, constitutional or otherwise, to have the 9 months and 25 days credited against her second parole violator term.

In a final attempt to distinguish her case from the cited sentencing cases, Bryant seeks to reassure the Court that paroled individuals will not find themselves at liberty to commit parole violations with impunity. Bryant notes, first, that many parole violations are themselves crimes carrying separate sentences, thereby countering the notion that a parole violator could escape punishment entirely. In addition, Bryant points to the many types of restrictions that may be imposed on a parole violator, even if incarceration is ruled out because the violator has time "banked" to her credit. We find these arguments unpersuasive. Many parole violations do not rise to the level of criminal activity, yet they are undesirable because they hinder the rehabilitation process.[5] Moreover, we believe the prospect of incarceration is an especially effective deterrent to potential parole violators. The availability of other sanctions, therefore, offers less assurance of compliance with parole terms. We simply do not find compelling petitioner's contention that the only sanction the Commission may apply in these circumstances, in which a person has already repeatedly violated the conditions that were previously set for her parole, is the addition of still more conditions for her parole.

It is clear that the Parole Commission has broad discretion to grant or deny parole, *Iuteri v. Nardoza,* 732 F.2d 32, 37 (2d Cir.1984); *Bialkin v. Baer,* 719 F.2d 590, 593 (2d Cir.1983), as well as to determine the weight to be given to mitigating factors. *See Campbell v. United States*

*Parole Comm'n,* 704 F.2d 106, 113 (3d Cir.1983) (citing *Solomon v. Elsea,* 676 F.2d 282, 289–91 (7th Cir.1982)); *see also* 28 C.F.R. § 2.20(c) and (d).[6] We decline to hold that the Parole Commission, which is committed to "maintaining proper supervision" of parolees, 18 U.S.C. § 4203(b)(4), must, in circumstances presented to us here, adopt a policy that would permit a person to violate the terms of her parole without fear of incurring additional incarceration.

Accordingly, the judgment of the district court is reversed.

---

5. In this case, for example, one of Bryant's parole violations was her failure to comply with drug aftercare treatment.

6. The Parole Commission recommended Bryant be released after 20 months, rather than the maximum 22 months provided by the guidelines. Judge Brieant believed the Commission

gave Bryant "credit for some but less than all" of the 9 months and 25 days, and concluded this result was irrational. We note, however, that the Commission was not "crediting" Bryant for time she had previously served, but merely considered it as a mitigating factor.