# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2017AP2440-CR and 2017AP2441-CR |

| | |
|---|---|
| COMPLETE TITLE: | State of Wisconsin, Plaintiff-Appellant-Petitioner, v. Richard H. Harrison, Jr., Defendant-Respondent-Cross Petitioner. |

REVIEW OF DECISION OF THE COURT OF APPEALS
Reported at 386 Wis. 2d 629,927 N.W.2d 923
(2019 – unpublished)

| | |
|---|---|
| OPINION FILED: | April 17, 2020 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | January 15, 2020 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Clark |
| JUDGE: | Nicholas J. Brazeau, Jr. |

JUSTICES:

ROGGENSACK, C.J., delivered the majority opinion of the Court, in which ZIEGLER, REBECCA GRASSL BRADLEY, KELLY, and HAGEDORN, JJ., joined. DALLET, J., filed a concurring opinion in which ANN WALSH BRADLEY, J. joined.

NOT PARTICIPATING:

ATTORNEYS:

For the plaintiff-appellant-petitioner, there were briefs filed by *Jennifer R. Remington,* assistant attorney general and *Joshua L. Kaul,* attorney general. There was an oral argument by *Jennifer R. Remington*.

For the defendant-respondent-cross-petitioner, there was a brief filed by *Jeremy A. Newman,* assistant state public defender. There was an oral argument by *Jeremy A. Newman*.

2020 WI 35

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

Nos.   2017AP2440-CR & 2017AP2441-CR
  (L.C. No.   2007CF115)

STATE OF WISCONSIN                    :           IN SUPREME COURT

**State of Wisconsin,**

      **Plaintiff-Appellant-Petitioner,**

  **v.**

**Richard H. Harrison, Jr.,**

      **Defendant-Respondent-Cross Petitioner.**

**FILED**

**APR 17, 2020**

Sheila T. Reiff
Clerk of Supreme Court

ROGGENSACK, C.J., delivered the majority opinion of the Court, in which ZIEGLER, REBECCA GRASSL BRADLEY, KELLY, and HAGEDORN, JJ., joined.  DALLET, J., filed a concurring opinion in which ANN WALSH BRADLEY, J. joined.

REVIEW of a decision of the Court of Appeals.  *Reversed.*

¶1   PATIENCE DRAKE ROGGENSACK, C.J.   We review an unpublished decision of the court of appeals[1] reversing an order of the circuit court[2] that granted sentence credit to Richard H.

---

[1] State v. Harrison, Nos. 2017AP2440-CR & 2017AP2441-CR, unpublished slip op. (Wis. Ct. App. Mar. 21, 2019).

[2] The Honorable Nicholas J. Brazeau, Jr. of Clark County presided.

Harrison, Jr. pursuant to Wis. Stat. § 973.155(1)(a) (2017-18)[3] and remanded with directions to advance the commencement of concurrent terms of extended supervision for Harrison's 2007 and 2008 cases to the date they would have begun but for Harrison's confinement for unrelated convictions that later were set aside.

¶2    We agree with the court of appeals that Harrison is not entitled to sentence credit pursuant to Wis. Stat. § 973.155(1)(a).  Harrison is not entitled sentence credit under § 973.155(1)(a) because the days he spent in custody for which he seeks sentence credit were not in connection with the courses of conduct for which those sentences were imposed.  He also is not entitled to sentence credit pursuant to Wis. Stat. § 973.04 because sentences for the 2007 and 2008 crimes were not vacated and re-imposed for the same crimes and the requested credit did not arise from vacated sentences for those crimes.  Furthermore, we conclude that the court of appeals erred by advancing the commencement of Harrison's terms of extended supervision for the 2007 and 2008 cases.  Whether to employ advancement is a public policy decision that is better left to the legislature.  Accordingly, we reverse the court of appeals decision in regard to advancement.

---

[3] All subsequent references to the Wisconsin Statutes are to the 2017-18 version unless otherwise indicated.

2

## I. BACKGROUND

### A. Harrison's Criminal History

¶3 Harrison has four relevant criminal cases. We shall refer to the individual cases by the year they were charged: 2007, 2008, 2010 and 2011. Importantly, these cases involve unrelated conduct.

### 1. The 2007 and 2008 Cases

¶4 In March 2009, Harrison and Clark County reached a global plea agreement for his 2007 and 2008 cases. For the 2007 case, he pled no contest to theft-business setting. The circuit court withheld sentence and placed Harrison on probation for six years. For the 2008 case, he pled no contest to fraud/rendering income tax return. The circuit court again withheld sentence and placed Harrison on probation for three years. The terms of probation were to run concurrently.

¶5 Less than three years later, the Department of Corrections revoked Harrison's probation. In December 2011, the circuit court sentenced Harrison, in each case, to six years of imprisonment, consisting of three years of confinement and three years of extended supervision. The sentences were to run concurrently and sentence credit was awarded.

### 2. The 2010 Case

¶6 In July 2010, Harrison was charged with burglary of a building or dwelling, resisting or obstructing an officer and theft of movable property, all as a repeater. A jury found Harrison guilty on all three counts. In January 2012, the circuit court sentenced Harrison to a total of twenty years of imprisonment,

3

consisting of thirteen years of confinement and seven years of extended supervision. Notably, his sentences were to run consecutively to each other and to all other sentences already imposed. Therefore, Harrison had to finish serving his terms of confinement for his 2007 and 2008 cases before the terms of confinement for the 2010 case commenced.[4]

¶7 The State concedes that Harrison's terms of confinement imposed for his 2007 and 2008 cases ended in February 2014. At that time, Harrison could have been released to extended supervision but for the sentences imposed for his 2010 case, as well as the 2011 case discussed below.

¶8 In January 2015, we set aside Harrison's convictions in the 2010 case because we concluded that his statutory right to judicial substitution had been violated.[5] We remanded for a new trial but the case was dismissed on the prosecutor's motion.

### 3. The 2011 Case

¶9 In September 2011, Harrison was charged with repeated sexual assault of a child. A jury found Harrison guilty, and, in March 2013, the circuit court sentenced Harrison to forty years of imprisonment, consisting of thirty years of confinement and ten years of extended supervision. The sentence was to run consecutively to all other sentences already imposed.

---

[4] Wisconsin Stat. § 302.113(4) states in relevant part: "All consecutive sentences . . . shall be computed as one continuous sentence. The person shall serve any term of extended supervision after serving all terms of confinement in prison."

[5] State v. Harrison, 2015 WI 5, 360 Wis. 2d 246, 858 N.W.2d 372.

¶10 Harrison petitioned the Western District of Wisconsin for a writ of habeas corpus, arguing his conviction must be set aside because he had been denied effective assistance of counsel in violation of his Sixth Amendment right. The district court granted his petition in October 2016.[6] In January 2017, the circuit court vacated the conviction. At that point, the State had to release or retry Harrison.[7]

¶11 In January 2019, the State and Harrison reached a plea agreement under which Harrison pled no contest to causing mental harm to a child. In August 2019, the circuit court imposed a sentence of eight years imprisonment, consisting of six years of confinement and two years of extended supervision. The sentence was to run consecutively to all other sentences already imposed.

B. Procedural History

¶12 In August 2017, after the circuit court vacated his conviction in the 2011 case but before he was resentenced, Harrison moved for sentence credit pursuant to Wis. Stat. § 973.155(1)(a). Specifically, he argued that from February 2014, when he would have begun extended supervision on the sentences for the 2007 and 2008 cases but for confinement on the sentences for the 2010 and 2011 cases which later were set aside, to January 2017, when his sentence for repeated sexual assault of a child was vacated pursuant to the writ of habeas corpus, he was not confined under

---

[6] Harrison v. Tegels, 216 F. Supp. 3d 956 (W.D. Wis. 2016).

[7] The record shows that he was not released due to failure to meet the terms of the bond that had been set.

5

a valid sentence. He moved to credit this period (February 2014 to January 2017) against the time he was to serve on extended supervision for the 2007 and 2008 cases.

¶13 The circuit court granted Harrison's motion, explaining it would be "silly to view the incarceration as simply wasted, dead time." The circuit court viewed its decision as "fundamentally fair."

¶14 The court of appeals took a different approach but reached a similar result. State v. Harrison, Nos. 2017AP2440-CR & 2017AP2441-CR, unpublished slip op. (Wis. Ct. App. Mar. 21, 2019). It first concluded Harrison was not entitled sentence credit because the sentence credit statute, Wis. Stat. § 973.155(1)(a), does not authorize credit for time spent in custody for a course of conduct unrelated to the course of conduct for which the sentence was imposed. Id., ¶2. As the court of appeals noted, "the courses of conduct were different between the cases . . . ." Id. However, the court of appeals concluded the circuit court reached "the correct practical result." Id., ¶3.

¶15 To so conclude, the court of appeals adopted what it called the "advance-the-commencement-of-valid-sentences concept." Id. "Under this approach, invalid sentence time is ignored, which has the effect of advancing to an earlier point on the timeline the commencement of all valid sentences." Id. Applying that approach, the court of appeals reasoned, "Harrison's periods of extended supervision in the two cases in which the convictions were not vacated should be deemed to have begun as soon as Harrison finished serving the initial confinement portion of his sentences

6

in his only valid cases: the two in which his convictions were not vacated." Id. The court of appeals, accordingly, reversed the circuit court order granting sentence credit but remanded with directions to advance the commencement of the terms of extended supervision for the 2007 and 2008 cases. Id., ¶4. Importantly, the court of appeals noted that Harrison had not been resentenced in the 2011 case. Id., ¶10 n.2.

¶16 The State petitioned for review, arguing the court of appeals effectively granted Harrison sentence credit even though it was not authorized by Wis. Stat. § 973.04. In other words, the State asserted that employing advancement contravened the provisions of § 973.04.

¶17 Harrison filed a cross-petition for review, arguing the circuit court's decision was correct: he could be granted sentence credit under Wis. Stat. § 973.155(1)(a). Harrison was concerned that were he not awarded sentence credit and his extended supervision was revoked, he could be "reconfined for all of the available time on the 2007 and 2008 sentences that Harrison was not 'in custody in connection with' those sentences." To explain further, he contended that if we were to imply that he was on extended supervision when he actually was confined, revocation would, arguably, permit the State to confine him for a longer period than if he received credit that was applied to extended supervision for his 2007 and 2008 cases. We granted both petitions before Harrison was resentenced in the 2011 case.

¶18 Following his resentencing in the 2011 case, Harrison moved us to summarily reverse the court of appeals and remand to

7

the circuit court with directions to deny application of sentence credit to his extended supervision for his 2007 and 2008 cases. He conceded that he is not entitled sentence credit or advancement in those cases. Although the State maintained that Harrison was entitled to neither, it opposed his motion because the State asks us to reach the merits in the matter now before us. The State argued in its response to the motion, "Harrison wants to concede the issues so he can receive sentence credit on his new period of confinement for causing mental harm to a child . . . instead of his old periods of extended supervision." The State also argued that the issues presented are not moot.

¶19 We denied Harrison's motion; however, we ordered the parties to address two additional issues:[8] first, whether Harrison is judicially estopped from arguing for reversal, and second, whether we should summarily reverse or vacate the court of appeals' decision given that both parties now take similar legal positions.

¶20 We reach the merits and reverse the court of appeals for the reasons explained below.

## II. DISCUSSION

### A. Standard of Review

¶21 We address issues with differing standards of review. First, we decide whether Harrison is judicially estopped from arguing for reversal. We independently determine whether the elements of judicial estoppel are satisfied. State v. Ryan, 2012 WI 16, ¶30, 338 Wis. 2d 695, 809 N.W.2d 37 (citing State v. White,

---

[8] Supreme Court Order, October 15, 2019.

2008 WI App 96, ¶15, 312 Wis. 2d 799, 754 N.W.2d 214). If the elements are satisfied, the decision to estop a party is a discretionary decision for the first court addressing the matter. See Ryan, 338 Wis. 2d 695, ¶30 (citing Salveson v. Douglas Cty., 2001 WI 100, ¶38, 245 Wis. 2d 497, 630 N.W.2d 182). We are the first court to address judicial estoppel in this matter.

¶22 We also consider whether the issues raised with regard to Wis. Stat. § 973.155(1)(a) and Wis. Stat. § 973.04 are moot. We decide as a matter of law whether a controversy is moot when it is based on undisputed facts. Winnebago Cty. v. Christopher S., 2016 WI 1, ¶31, 366 Wis. 2d 1, 878 N.W.2d 109.

¶23 Whether to summarily dispose of a petition or to address the merits when a party changes positions from that initially presented is a decision committed to our discretion. Wis. Stat. § 809.21(1) ("The court upon its own motion or upon the motion of a party may dispose of an appeal summarily.").

¶24 Here, we choose to reach the merits. Therefore, we decide whether Wis. Stat. § 973.155(1)(a) authorizes sentence credit for extended supervision for the 2007 and 2008 cases and to some extent, § 973.155(1)(a)'s interaction with Wis. Stat. § 973.04. To do so, we independently interpret and apply Wisconsin statutes under known facts as questions of law. Daniel v. Armslist, LLC, 2019 WI 47, ¶13, 386 Wis. 2d 449, 926 N.W.2d 710; State v. Friedlander, 2019 WI 22, ¶17, 385 Wis. 2d 633, 923 N.W.2d 849.

¶25 The court of appeals applied a concept similar to that found in federal common law wherein commencement of a subsequent,

9

consecutive sentence that follows an earlier sentence later determined to be invalid is advanced to the date on which the second sentence was imposed. Tucker v. Peyton, 357 F.2d 115, 118 (4th Cir. 1966). We have not discussed advancement as a Wisconsin common law concept relating to sentencing. The nature and applicability of a common law doctrine are questions of law that we independently review. State v. Hobson, 218 Wis. 2d 350, 358, 577 N.W.2d 825 (1998).

## B. Judicial Estoppel

¶26 "Judicial estoppel is an equitable doctrine invoked at the court's discretion to preclude a party from abusing the court system." State v. Steinhardt, 2017 WI 62, ¶18 n.14, 375 Wis. 2d 712, 896 N.W.2d 700; see also State v. Petty, 201 Wis. 2d 337, 347, 548 N.W.2d 817 (1996) (explaining that judicial estoppel is intended "to protect against a litigant playing 'fast and loose with the courts' by asserting inconsistent positions").

¶27 To invoke judicial estoppel requires: "(1) the later position must be clearly inconsistent with the earlier position; (2) the facts at issue should be the same in both cases; and (3) the party to be estopped must have convinced the first court to adopt its position." Ryan, 338 Wis. 2d 695, ¶33.

¶28 With respect to sentence credit, Harrison contends his "original position, that he was entitled to sentence credit, was wholly contingent on the fact that he had not been resentenced in either the 2010 or 2011 case." The State responds that both parties were aware of the likelihood of resentencing.

10

¶29 The State also contends that Harrison's change in position is an attempt at "manipulating the court system." However, the State has not asked us to estop Harrison because it also seeks reversal, which makes this case different than most cases where we considered judicial estoppel. Harrison also responds: "[I]t is unclear how or why this [c]ourt would estop Harrison from conceding that he is not entitled to sentence credit in this appeal."

¶30 We agree with Harrison. We should not estop a party from making a necessary concession. Attorneys, particularly those who participate in appeals where the court's decision will establish precedent for non-parties, are expected to make concessions. See Michael R. Dreeben, The Role of the Solicitor General in the Department of Justice's Appellate Process, United States Attorneys' Bulletin, January 2013, at 5, 10 ("Members of the [United States] Supreme Court expect prosecutors to confess error in appropriate cases. Indeed, Justices have expressed incomprehension when prosecutors have failed to confess error . . . ."). Furthermore, SCR 20:3.3 obligates attorneys to be candid with tribunals.

¶31 We conclude Harrison has not taken a position as to advancement that is clearly inconsistent with an earlier position. Also, whether to employ advancement in a sentencing context is a question we have not directly addressed. Accordingly, we conclude that Harrison is not estopped from making sentence credit or advancement concessions.

C. The Merits

11

¶32 As we explained above, we do not apply the doctrine of judicial estoppel to Harrison; furthermore, we conclude that Harrison's change in position is an insufficient basis for summarily reversing or vacating an opinion that was the result of an adversarial proceeding. While we have summarily disposed of cases following a concession of a party, the reversible errors in such cases have been obvious. See e.g., State v. Lord, 2006 WI 122, ¶5, 297 Wis. 2d 592, 723 N.W.2d 425 (per curiam) (explaining that the "State's concession that the legal principle adopted by the court of appeals is an incorrect statement of law effectively eliminates the issue upon which the petition for review was granted."). This case, unlike Lord, presents difficult and novel questions of law for which our opinion will be helpful. Accordingly, we decline to summarily dispose of the petition for review.

¶33 We also conclude that the court of appeals' employment of advancement in regard to the 2007 and 2008 cases likely precludes mooting the issues raised in this review. Christopher S., 366 Wis. 2d 1, ¶31. However, even if the issues were moot, we would decide them because the application of advancement and sentence credit under Wis. Stat. § 973.155 or Wis. Stat. § 973.04 when a sentence has been vacated are issues likely to arise again and our decision will alleviate uncertainty. Outagamie Cty. v. Melanie L., 2013 WI 67, ¶80, 349 Wis. 2d 148, 833 N.W.2d 607. Accordingly, we address the merits.

D. Wisconsin's Sentence Credit Statutes

1. General Principles of Statutory Interpretation

12

¶34 We interpret Wis. Stat. § 973.155 and Wis. Stat. § 973.04 to decide whether Harrison is entitled sentence credit for the 2007 and 2008 cases. "The purpose of statutory interpretation is to determine what the statute means so that it may be properly applied." Westmas v. Creekside Tree Serv. Inc., 2018 WI 12, ¶18, 379 Wis. 2d 471, 907 N.W.2d 68 (citing State ex rel. Kalal v. Circuit Court for Dane Cty., 2004 WI 58, ¶44, 271 Wis. 2d 633, 681 N.W.2d 110). We, therefore, begin with the language of the statute. Westmas, 379 Wis. 2d 471, ¶18 (citing Kalal, 271 Wis. 2d 633, ¶45). "If the words chosen for the statute exhibit a 'plain, clear statutory meaning,' without ambiguity, the statute is applied according to the plain meaning of the statutory terms." Westmas, 379 Wis. 2d 471, ¶18 (quoting State v. Grunke, 2008 WI 82, ¶22, 311 Wis. 2d 439, 752 N.W.2d 769).

¶35 In construing the plain meaning of a particular statute, we may consider related statutes. Winebow, Inc. v. Capitol-Husting Co., Inc., 2018 WI 60, ¶30, 381 Wis. 2d 732, 914 N.W.2d 631 (quoting State v. Clausen, 105 Wis. 2d 231, 244, 313 N.W.2d 819 (1982)). "Context is important to meaning." Kalal, 271 Wis. 2d 633, ¶46. Statutes are interpreted "in relation to the language of surrounding or closely-related statutes." Id.; see also Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 252 (2012) ("Statutes in pari materia are to be interpreted together, as though they were one law.").

2. Wisconsin Stat. § 973.155

¶36 Wisconsin Stat. § 973.155(1)(a) states in relevant part: "A convicted offender shall be given credit toward the

13

service of his or her sentence for all days spent in custody in connection with the course of conduct for which sentence was imposed."  Therefore, two statutory issues are presented:  (1) whether Harrison was in custody from February 2014 to January 2015, when his convictions for the 2010 case were vacated, in connection with the courses of conduct that gave rise to the 2007 and 2008 cases; and (2) whether Harrison was in custody from January 2015 to January 2017, when his conviction for the 2011 case was vacated, in connection with the courses of conduct that gave rise to the 2007 and 2008 cases.

### 3.  Wisconsin Stat. § 973.04

¶37  Wisconsin Stat. § 973.04 states:  "When a sentence is vacated and a new sentence is imposed upon the defendant for the same crime, the department shall credit the defendant with confinement previously served."  In order to receive sentence credit pursuant to § 973.04 the following requirements must be met:  (1) an imposed sentence must be vacated; (2) the vacated sentence was re-imposed for the same crime; (3) the time the defendant requested as sentence credit was served in satisfaction of the sentence that was vacated. State v. Lamar, 2011 WI 50, ¶4, 334 Wis. 2d 536, 799 N.W.2d 758.

### a.  Harrison's Positions

¶38  Harrison argued at the court of appeals that he must have been confined until January 2017 "based on the course[s] of conduct for which sentences were imposed in the 2007 and 2008 cases [because] [t]here was no other legal basis for [his] confinement." Therefore, Harrison argued, his sentences from the 2007 and 2008

14

cases must have "continued running 'as if there had been no judgment' from the date of sentencing through Harrison's release from prison [in January 2017]." Under different circumstances, we have stated that a vacated judgment of conviction "lacks force or effect" and the act of vacating "places the parties in the position they occupied before entry of the judgment." Id., ¶39 n.10 (quoting 47 Am. Jur. 2d Judgments § 714).

¶39  As support for his contention, Harrison cited Wis. Stat. § 302.113(4), which states in relevant part:

> All consecutive sentences . . . shall be computed as one continuous sentence. The person shall serve any term of extended supervision after serving all terms of confinement in prison.

Harrison did not explain why this statute, which directs that consecutive sentences be computed as one continuous sentence, has any impact on whether he should receive credit toward concurrent sentences in the 2007 and 2008 cases.

¶40  Lastly, he claimed case law:

> [R]ecognize[s] the distinction between a rule, on the one hand, that would allow a defendant to "bank" time served on vacated or voided sentences to be used like a "line of credit" against unrelated later sentences and a rule, on the other hand, that requires credit be granted when the service of a defendant's lawfully imposed sentence is delayed based on the service of a subsequently vacated sentence.

Notably, the primary case Harrison cited for this contention, Tucker v. Peyton, granted advancement and not sentence credit.

¶41  And finally, before us, Harrison concedes that he has no basis for sentence credit on the 2007 and 2008 cases because he has been resentenced for the 2011 case. Rather, he implies that

15

he is entitled to sentence credit on the resentencing for the 2011 case from February 2014 when Harrison's confinement for the 2007 and 2008 cases ended until January 2017 when the sentence in the 2011 case was vacated. However, he does not ask us to employ Wis. Stat. § 973.04 to that purpose.[9]

### b. State's Position

¶42 The State has maintained a consistent position. It argued in the court of appeals and continues to argue here that the course of conduct for which a prisoner was confined must be "factually connected" to the course of conduct for which the "sentence was imposed" in order to receive credit. From February 2014, when the confinement for the 2007 and 2008 cases concluded until January 2015 when the conviction for the 2010 was vacated, the 2010 case was the factual basis for his incarceration. From January 2015 to January 2017, the 2011 case was the factual basis for Harrison's confinement. The State cites State v. Johnson, 2009 WI 57, ¶3, 318 Wis. 2d 21, 767 N.W.2d 207, to support its position.

¶43 Johnson explains that to give sentencing credit, a court must determine: "(1) whether the offender was 'in custody' within the meaning of Wis. Stat. § 973.155(1)(a); and (2) whether all or part of the 'custody' for which sentence credit is sought was 'in connection with the course of conduct for which sentence was imposed.'" Id., ¶27. Johnson also instructs that "[n]either the statute nor the case law . . . justifies crediting a defendant's

---

[9] The 2011 case is not before us on this review.

16

sentence for time spent in presentence custody that is not related to the matter for which sentence is imposed." Id., ¶32. Furthermore, "a mere procedural connection will not suffice" for the requisite factual connection. Id., ¶33.

### c. Harrison's Sentence Credit

¶44 We are persuaded by the State's arguments. The language of Wis. Stat. § 973.155(1)(a) that is relevant to Harrison's claim is plain.[10] Our decision in Johnson clearly explained that a factual connection between the sentence imposed and the custody that preceded it is required for sentence credit. We said, a "factual connection fulfills the statutory requirement for sentence credit, and . . . a procedural or other tangential connection will not suffice." Id., ¶33 (quoting State v. Floyd, 2000 WI 14, ¶17, 232 Wis. 2d 767, 606 N.W.2d 155).

¶45 Furthermore, when a sentence is vacated and a resentencing occurs, Wis. Stat. § 973.155(1)(a) must operate in concert with Wis. Stat. § 973.04. At times, both statutes must be considered for a particular period of custody. Lamar, 334 Wis. 2d 536, ¶32, n.7. Harrison's earlier interpretation that requested sentence credit for 2007 and 2008 cases would have precluded application of § 973.04 to the resentencing that occurred in the 2011 case. However, there is no reason to believe that the

---

[10] We interpreted the term, "custody" in Wis. Stat. § 973.155(1)(a) where conflicting meanings were proposed for various types of pretrial restrictions. State v. Magnuson, 2000 WI 19, ¶11, 233 Wis. 2d 40, 606 N.W.2d 536. Magnuson concluded that "custody" occurs, "whenever the offender is subject to an escape charge for leaving that status." Id., ¶25.

17

legislature would have written § 973.155(1)(a) so broadly that it would have a preclusive effect on the credit that § 973.04 directs. As we explained in Lamar, "[t]he operative language of § 973.04——that the defendant shall be credited 'with confinement previously served'——must be interpreted in light of the nature of the particular sentences imposed." Id., ¶35. Therefore, § 973.155(1)(a) and § 973.04 must be separately analyzed based on the specific sentences imposed and the conduct that underlies them. Id. Here, only § 973.155(1)(a) is before us because no sentence that was vacated and re-imposed for the same crime is at issue, which § 973.04 requires.

¶46 In addition, Harrison's arguments were not grounded in the plain meaning of Wis. Stat. § 973.155(1)(a), as the State's arguments were. Instead, Harrison argued that fairness and equity required stepping outside of the plain meaning of § 973.155(1)(a). In a previous case, we rejected the contention that sentence credit statutes could be read contrary to their plain meaning. Friedlander, 385 Wis. 2d 633, ¶44 (citing Black v. City of Milwaukee, 2016 WI 47, ¶30, 369 Wis. 2d 272, 882 N.W.2d 333) ("Courts, however, should be most hesitant to adopt judicially created remedies when the legislature, the primary policymaker, has statutorily addressed the topic. Here, we defer to those policy choices.").

¶47 Furthermore, determining when a result is fair is subject to debate. In State v. Allison, 99 Wis. 2d 391, 299 N.W.2d 284 (Ct. App. 1980), the court of appeals rejected the sort of equitable approach Harrison had proposed. The court of appeals

18

"[r]ecogniz[ed] Allison's claim for credit would have the anomalous effect of rewarding the habitual criminal with credit while the person who does not commit a later crime is not similarly compensated. Rewarding habitual criminality is clearly against public policy." Id. at 394.

¶48 Reasonable minds can disagree with regard to Harrison's position below. However, sentence credit historically has been the purview of the legislature. See generally Richard A. Karbarker, Comment, Right to Credit for Time Served and to Preservation of Original Sentence, 1967 U. Ill. L.F. 180. Sentence credit is not a concept known to the common law. Indeed, Karbarker's comment from 1967 provides a telling illustration:

> In the typical case, because of a constitutional (or other) error in the first trial, the defendant wins a new trial, usually by means of a writ of habeas corpus, after having served a part of his sentence under the reversed conviction. Let us assume that defendant's original sentence was for 10 years and that he has already served 5. After the second trial, defendant is sentenced to seven years. In effect, defendant's sentence has been increased upon his second trial for he will now have to remain in prison for 12 years instead of only 10 years. Defendant asks to be given credit on his new sentence for the five years already served. In over two-thirds of the states, this request will probably be denied. . . . Only recently have courts and legislatures begun to realize the seriousness of this problem and to formulate rational solutions.

Id. at 180–81.

¶49 And finally, applying credit for time confined to unrelated terms of extended supervision also ignores that confinement and extended supervision serve different penological goals. Extended supervision is to assist convicted defendants'

19

rehabilitation as they re-enter society, as well as to protect the community into which they transition. See State v. Miller, 2005 WI App 114, ¶11, 283 Wis. 2d 465, 701 N.W.2d 47 (concluding that requiring payment of child support is appropriate in serving "the dual goals of supervision: rehabilitation of the defendant and the protection of a state or community interest").

¶50 We conclude Harrison is not entitled sentence credit pursuant to Wis. Stat. § 973.155(1)(a) on his extended supervision for the 2007 and 2008 cases.

### E. Advancement

¶51 Having rejected the contention that Harrison is entitled sentence credit, which is statutorily defined, we now consider the concept of advancement, which the court of appeals employed. Some jurisdictions, as a matter of common law, might deem Harrison to have started serving his terms of extended supervision when he would have but for sentences that were later set aside. We have not previously addressed this issue.

¶52 The basis for advancement, in most jurisdictions, is the common law. Tucker, 357 F.2d at 118; Jamison v. Cupp, 555 P.2d 475, 476-77 (Or. App. 1976) ("Although the issue has not generally been viewed as being of constitutional dimension, the courts have consistently resolved it on the basis of traditional notions of fair play which underlie the due process concept and the absence of any but technical reasons to the contrary."). Contra Gentry v. State, 464 S.W.2d 848 (Tex. Ct. Crim. App. 1971) (suggesting advancement is grounded in constitutional law).

20

¶53 The Maine Supreme Court said that advancement was necessary to comply with the "spirit" of Maine's "statutory requirement that a convict to State Prison serve the full term for which he was sentenced . . . . Without credit for the time [] served since the imposition of the second sentence although originally applicable to the erroneous sentence, the convict is then made to serve more than the full term of the only valid sentence upon which his incarceration in State Prison may be legally predicated." Green v. State, 245 A.2d 147, 149-50 (Me. 1968), opinion supplemented by, Green v. State, 247 A.2d 117 (Me. 1968).

### 1. The History of Advancement

¶54 Placed in historical context, the concept of advancement seems to be an outgrowth of a concept that existed before consecutive sentencing: that a judgment not stated in certain terms is void. In Ex parte Roberts, 9 Nev. 44, 45 (1873), "[u]nder a judgment of conviction for prison-breaking, the petitioner was on the 11th day of March, 1872, sentenced to confinement in the State prison for the period of one year, to commence upon the expiration of a term of imprisonment which he was then undergoing for robbery." The robbery conviction was vacated. Id. at 45-46. The petitioner sought a writ of habeas corpus, arguing "the judgment of the 11th of March, 1872, is void for uncertainty, since it depends upon an impossible condition, or that the sentence thereunder commenced running upon its rendition, and has now expired by limitation." Id. at 46. The State argued that the sentence for prison-breaking commenced once the judgment in the

21

robbery case was vacated. Id. Without citing any authority, the Nevada Supreme Court concluded that "[e]ither the judgment of the 11th of March commenced to run upon its rendition, or it is void for uncertainty, and in neither case is the warden of the State prison entitled to the custody of the prisoner." Id.

¶55 A lower court in Ohio reasoned similarly in 1885. Ex parte Jordan, 5 Ohio Dec. 397 (Probate Ct. 1885). Counsel for a prisoner argued that the prisoner must have started serving his second sentence at the moment the act criminalizing his conduct for his first sentence was declared unconstitutional. The court explained:

> I cannot agree with the counsel for the prisoner that the second sentence took effect at the time the act was declared unconstitutional, namely, in May, 1885.
>
> I am of the opinion that the act under which the prisoner was tried, convicted and sentenced for having burglar's tools in his possession having been declared unconstitutional, affected the proceedings from the beginning.
>
> An unconstitutional law is void, and is no law. An offense created by it is not a crime. A conviction under it is not merely erroneous, but is illegal and absolutely void, and can not be a legal cause of imprisonment.
>
> If there was no law, and no conviction could have been had under it, it must follow that the conviction and sentence were illegal and void on the [date the first sentence was imposed]. If that be true, it must follow that he was not serving his term on the first sentence at any time, since there was no law, no trial, no sentence, no term to serve. The second sentence began, then, [on that day], if it began at all, and under the rules he has worked out his fine and costs under such sentence.

22

But were I mistaken in this conclusion, I would further hold that the second sentence, which provides that the same shall take effect after the expiration of a previous sentence, is void for uncertainty.

Id. at 398.

¶56 In the mid-1800s, there was still debate about the propriety of consecutive sentences. Particularly, some argued that, because the commencement date of the second or subsequent sentence was uncertain at the time the sentence was imposed, such sentences should be void for uncertainty.

¶57 As courts started to reject this argument, some also started to reject advancement. See Kite v. Commonwealth, 52 Mass. 581, 585 (1846), overruled by Brown v. Comm'r of Corrs., 147 N.E.2d 782 (Mass. 1958) ("Though uncertain at the time, depending upon a possible contingency that the imprisonment on the former sentence will be remitted or shortened, it will be made certain by the event. If the previous sentence is shortened by a reversal of the judgment, or a pardon, it then expires; and then, by its terms, the sentence in question takes effect, as if the previous one had expired by lapse of time."). Today, no one would argue that consecutive sentences are void merely because the first sentence could be shortened and, therefore, the commencement date of the second is uncertain.

¶58 Nevertheless, advancement, once seemingly tied to this uncertainty, became untethered and developed into an independent concept. Indeed, the United States Supreme Court utilized advancement in 1894. Blitz v. United States, 153 U.S. 308, 318 (1894) (concluding that upon reversal of the first count, the

23

sentence on the remaining count commenced on the date fixed for imprisonment on the first count). Its decision has served as the primary authority for advancement in the federal courts. See United States v. Tuffanelli, 138 F.2d 981, 984 (7th Cir. 1943).

## 2. Approaches Toward Advancement

¶59 Other jurisdictions' starting point when deciding whether to adopt advancement has been to determine whether a reversed judgment of conviction is "void" from its inception or "voidable":

> [T]he question [of] whether the invalidated earlier sentence was void or merely voidable may be important to the determination of the effect of the invalidation upon a later, consecutive sentence. Some courts have manifested an unwillingness to permit time served under an invalidated sentence which was merely voidable to be credited against the term of a valid consecutive sentence. The underlying idea seems to be that a voidable sentence is, until invalidated, valid in all respects, and time served in prison under such a sentence cannot, in logic, be held to be referable to any other sentence. Conversely, some courts, in holding that upon invalidation of an earlier separately imposed consecutive sentence the later sentence runs from the date that it was imposed, have taken pains to point out that the earlier sentence was absolutely void . . . .

Effect of Invalidation of Sentence Upon Separate Sentence Which Runs Consecutively, 68 A.L.R.2d 712 (1959).[11] When courts have concluded that a first sentence is voidable, they have disallowed

---

[11] The American Law Reports has been a commonly cited authority by those courts that have authorized advancement. E.g., State v. Berumen II, slip op. No. A-10596, 2011 WL 3631134 (Alaska App.); Jackson v. Jones, 327 S.E.2d 206 (Ga. 1985); State v. Owen, 410 P.2d 698 (Ariz. App. 1966).

advancement. See Kite, 52 Mass. at 585; see also Smith v. Lovell, 77 A.2d 575 (Me. 1950), overruled by Green, 245 A.2d 147.

¶60 When they have concluded a first sentence is void, the next question has been whether fairness requires advancing the commencement date of a second or subsequent sentence. Burton C. Agata, Time Served Under a Reversed Sentence or Conviction — A Proposal and a Basis for Decision, 25 Mont. L. Rev. 1, 50 (1963) (explaining courts "rely[] on a sense of fairness, [to] allow[] credit for the time served under the reversed sentence by reckoning the commencement of the second sentence from the time it was imposed"). At least one court has skipped the traditional first step of deciding whether a judgment is void or voidable and decided to adopt advancement based on fairness. Green, 245 A.2d at 149 ("Fair play requires that where a prior sentence is set aside for error, whether the sentence be void or voidable, the second sentence which would otherwise commence at the termination of the previous sentence must be moved forward and made to run as of the first day of actual incarceration of the prisoner after its imposition.").

¶61 The argument for why advancement is fair seems to be that "[t]he defendant will serve a period with respect to the second offense, commencing and terminating at the same time as if there had been no erroneous sentence in existence when it was imposed." Agata, Time Served Under a Reversed Sentence or Conviction, at 48-49; see also State ex rel. Willis v. Brantley, 285 N.E.2d 571, 573 (Ill. App. 1972) ("Where, as here, appellant's prior conviction was reversed and the state has declined to retry

the case, and where appellant could have been serving a validly imposed second sentence but for the service of the invalid sentence, justice requires that the second sentence be deemed to run from the date of its imposition."). Some courts have said advancement is the "humane" approach. E.g., Potter v. State, 139 S.E.2d 4, 5 (N.C. 1964); Brown, 147 N.E.2d at 784; see also Stidham v. Sowers, 255 So. 2d 740, 744 (La. 1971) ("We agree with the trial judge that the principles of justice and fairness demand that Stidham's sentence for Simple Escape commence on the date of its imposition . . . and not on the date his sentence for Armed Robbery was declared invalid.").

### 3. A Policy Choice

¶62 We do not adopt advancement for several reasons. Primarily, we conclude that adopting advancement is a public policy decision better left to the legislature. As explained above, we have previously stated that we are bound by the plain meaning of sentence credit statutes and to some degree applying advancement would conflict with the statutory choices of the legislature.[12]

¶63 Second, and relatedly, we again note that what is "fair" is the subject of much debate. In Allison, the court of appeals concluded that advancement would reward habitual offenders. Allison, 99 Wis. 2d at 394. Others have been wrongfully imprisoned

---

[12] To some extent, it could be argued that the legislature has already decided what to do with the advancement concept by its enactment of Wis. Stat. § 973.04. Section 973.04 directs how and when sentence credit is allocated for confinement previously served on a sentence that is later vacated and a new sentence imposed for the same crime.

26

but only those who were repeat offenders and sentenced to consecutive sentences are able to benefit from advancement. Those wrongfully imprisoned for a single offense have no similar recourse.

¶64 Furthermore, those serving a single sentence are not going to be placed "in the position they occupied before entry of the judgment" merely because a court declares the judgment void. Lamar, 334 Wis. 2d 536, ¶39 n.10. These people will have lost months, maybe years, of their lives and nothing the court does will fix that. Other courts seem to agree that it would be "inauspicious social policy" to give those serving a single sentence a "line of credit" against sentences for future crimes. See State v. Berumen II, slip op. No. A-10596, 2011 WL 3631134 *2 (Alaska App.) (Mannheimer, J., dissenting) (citing Marker v. State, 829 P.2d 1191, 1195 (Alaska App. 1992)). "[I]f we allowed defendants to 'bank' the time they served in prison on any sentence that was subsequently overturned, we would give these defendants 'a sense of immunity' and a perverse incentive to engage in future criminal conduct." Berumen II, 2011 WL *2 (Mannheimer, J., dissenting) (quoting Marker, 829 P.2d at 1195); see also Bryant v. Warden, Metro. Corr. Ctr. of N.Y.C., 776 F.2d 394, 396 (2d Cir. 1985) (explaining that time served on criminal sentences should not be banked thereby giving defendants a "line of credit" to be applied against future sentences).

¶65 Accordingly, if Wisconsin is to adopt advancement as a sentencing adjunct, it is a task better left to the legislature.

### III. CONCLUSION

27

¶66 We agree with the court of appeals that Harrison is not entitled sentence credit. Sentence credit is governed by statute, Wis. Stat. § 973.155(1)(a). Harrison is not entitled to sentence credit under § 973.155(1)(a) because the days he spent in custody were not in connection with the course of conduct for which sentence was imposed. He also is not entitled to sentence credit pursuant to Wis. Stat. § 973.04 because sentences for the 2007 and 2008 crimes were not vacated and re-imposed for the same crimes and the requested credit did not arise from vacated sentences for those crimes. Furthermore, we conclude that the court of appeals erred by advancing the commencement of Harrison's terms of extended supervision for the 2007 and 2008 cases. Whether to employ advancement is a public policy decision better left to the legislature. Accordingly, we reverse the court of appeals in regard to advancement.

*By the Court.*—The decision of the court of appeals is reversed.

¶67 REBECCA FRANK DALLET, J. *(concurring)*. In the period of time between this court granting review and hearing oral argument, the factual and legal support for Richard H. Harrison Jr.'s claim disappeared. Accordingly, Harrison asks us to summarily dispose of this appeal, pursuant to Wis. Stat. § 809.21(1) (2017-18).[1] The majority rejects his request and instead issues an advisory opinion concerning what are now hypothetical facts. The majority erroneously delves into, and rejects, the concept of advancement, despite the fact that no party is asking this court to adopt that concept. For the following reasons, I respectfully concur.

¶68 The procedural history of this appeal and the interplay between Harrison's 2007, 2008, 2010, and 2011 criminal convictions illustrates why this case should be summarily reversed. Harrison was sentenced in his 2007 and 2008 cases to three years of initial confinement and three years of extended supervision to be served concurrently. Shortly thereafter, in his 2010 case, Harrison was sentenced to 13 years of initial confinement followed by seven years of extended supervision, to run consecutively to any other sentence. Finally, in his 2011 case, Harrison was sentenced to 30 years of initial confinement, followed by ten years of extended supervision, to run consecutively to any other sentence.

---

[1] Wisconsin Stat. § 809.21(1) provides: "The court upon its own motion or upon the motion of a party may dispose of an appeal summarily."

All subsequent references to the Wisconsin Statutes are to the 2017-18 version unless otherwise indicated.

1

¶69 Harrison finished serving the initial confinement portions of his 2007 and 2008 sentences in February 2014. Harrison then began serving the initial confinement portion of his 2010 sentence, as he was required to serve that time before he could begin serving the extended supervision portion of his 2007 and 2008 sentences.

¶70 In January of 2015, this court set aside Harrison's 2010 conviction because his statutory right to judicial substitution had been violated. State v. Harrison, 2015 WI 5, 360 Wis. 2d 246, 858 N.W.2d 372. On June 23, 2015, the circuit court dismissed the case. Upon dismissal, Harrison began serving the initial confinement portion of his 2011 sentence.

¶71 In October 2016 the Federal District Court for the Western District of Wisconsin granted Harrison's writ of habeas corpus challenging his 2011 conviction on the grounds of ineffective assistance of counsel. In early 2017 the circuit court entered an order vacating Harrison's conviction and sentence in the 2011 case and subsequently set a new trial date.

¶72 In August 2017 Harrison moved the circuit court for sentence credit against the extended supervision portion of his 2007 and 2008 cases under Wis. Stat. § 973.155(1)(a).[2] Harrison asserted that he was entitled to credit for the time period from February 2014 until January 2017 because his confinement during that period was not pursuant to a valid sentence. In November

---

[2] Wisconsin Stat. § 973.155(1)(a) provides: "A convicted offender shall be given credit toward the service of his or her sentence for all days spent in custody in connection with the course of conduct for which sentence was imposed."

2

2017 the circuit court awarded Harrison sentence credit of roughly three years against the extended supervision portion of his 2007 and 2008 sentences.

¶73 In March 2019 the court of appeals reversed the circuit court order, determining that sentence credit was improper under Wis. Stat. § 973.155(1)(a) because the "courses of conduct were different between the cases with the ultimately vacated convictions and the cases with the never vacated convictions." State v. Harrison, Nos. 2017AP2440-CR & 2017AP2441-CR, unpublished slip op., ¶2 (Wis. Ct. App. Mar. 21, 2019). However, the court of appeals remanded the case with direction that the Department of Corrections (DOC) "advance the commencement of Harrison's extended supervision periods in the 2007 and 2008 cases, so that these extended supervision periods commence on the dates on which Harrison completed serving the initial confinement portions of his sentences in the 2007 and 2008 cases." Id., ¶26.

¶74 The State filed a petition for review on April 22, 2019, challenging the court of appeals' adoption of the advancement concept. Harrison filed a cross-petition for review on May 22, 2019, asserting that he was entitled to sentence credit against the 2007 and 2008 cases. On August 14, 2019, we accepted both petitions for review.

¶75 At the time this court accepted the petitions for review, Harrison had already pled no contest in the 2011 case, but had not yet been resentenced. Just five days later, on August 19, 2019, the circuit court resentenced Harrison to six years of initial confinement followed by two years of extended supervision and

3

ordered the DOC to calculate Harrison's sentence credit pursuant to Wis. Stat. § 973.04.[3]

¶76 In September 2019 the State moved the court to supplement the record with eight documents, including the transcript from Harrison's August 19, 2019 resentencing hearing. In response, Harrison filed a motion asking the court to summarily reverse the court of appeals' decision and to remand this case to the circuit court to enter an order denying Harrison's motion for sentence credit. In his motion, Harrison conceded that the underlying basis for his sentence credit claim no longer existed because a new sentence had been imposed in his 2011 case. We granted the motion to supplement the record, denied the motion for summary reversal, and asked the parties to brief the following relevant issue:

> Whether this court may or should summarily reverse or vacate a court of appeals' decision due to a change in position by one party or due to the fact that both parties now appear to have a similar position as to a legal issue addressed in the court of appeals' decision.[4]

---

[3] Wisconsin Stat. § 973.04 provides: "When a sentence is vacated and a new sentence is imposed upon the defendant for the same crime, the department shall credit the defendant with confinement previously served."

[4] We also asked the parties to brief a second issue:

Whether the defendant-respondent is judicially estopped from now taking the position that the court of appeals' decision should be reversed and the cases should be remanded to the circuit court with directions to deny his motion for sentence credit, including whether the fact of the intervening sentencing in Ashland County Case No. 2011CF82 renders the doctrine of judicial estoppel inapplicable.

4

Supreme Court Order, October 15, 2019. Through briefing, and at oral argument, Harrison effectively explained why this court should summarily reverse the court of appeals' decision.

¶77 The undisputed bottom line is this: everyone agrees that Harrison is not entitled to the sentence credit he received from the circuit court or the relief ordered by the court of appeals. Harrison admits that since he was resentenced in the 2011 case, he can no longer meritoriously assert that the roughly three years he spent in prison from February 2014-January 2017 was not connected to a lawfully imposed sentence. In other words, now that the time was clearly connected to his 2011 case, in which he was resentenced, there is no basis to argue for credit against his 2007 and 2008 cases. The majority chooses to overlook the 2011 resentencing and the fact that, upon resentencing, the entire foundational basis for the court of appeals' decision regarding the concept of advancement has disappeared.

¶78 Since the advancement remedy ordered by the court of appeals was based on the then-existing fact that no new sentence had been imposed in the 2011 case,[5] any decision from this court

---

Supreme Court Order, October 15, 2019. I agree with the majority that Harrison is not estopped from making sentence credit or advancement concessions. See majority op., ¶31.

[5] The court of appeals observed in its decision:

> First, in the event that Harrison is sentenced in a revived 2011 case, the normal rules regarding the service of confinement time before the service of extended supervision time should apply. Second, Harrison should be credited with all sentence credit in the 2011 case to which he is entitled under Wis. Stat. § 973.155.

5

regarding advancement is merely advisory.  Tammi v. Porsche Cars N. Am., Inc., 2009 WI 83, ¶3, 320 Wis. 2d 45, 768 N.W.2d 783 ("Courts will not render merely advisory opinions.") (quoted source omitted).  Rather than render an advisory opinion, I would summarily reverse the court of appeals and remand the case to the circuit court to enter an order denying Harrison's motion for sentence credit.  It is this court's "job to adjudicate the dispute in front of us."  State v. Steffes, 2013 WI 53, ¶27, 347 Wis. 2d 683, 832 N.W.2d 101; see State v. Grandberry, 2018 WI 29, ¶31 n.20, 380 Wis. 2d 541, 910 N.W.2d 214 (rejecting the party's invitation to "make broad pronouncements based on hypothetical facts").  There is no longer a dispute in front of us to adjudicate.

¶79  For the foregoing reasons, I would summarily reverse the court of appeals and remand the case to the circuit court to enter an order denying Harrison's motion for sentence credit.

¶80  I am authorized to state that Justice ANN WALSH BRADLEY joins this concurrence.

---

State v. Harrison, Nos. 2017AP2440-CR & 2017AP2441-CR, unpublished slip op., ¶10 n.2, (Wis. Ct. App. Mar. 21, 2019).