COURT OF APPEALS
DECISION
DATED AND FILED

June 2, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal Nos. 2020AP385-CR**
**2020AP386-CR**
**STATE OF WISCONSIN**

Cir. Ct. Nos. 2018CF3528
2018CF5028

**IN COURT OF APPEALS**
**DISTRICT I**

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

WILLIE M. MCBRIDE,

DEFENDANT-APPELLANT.

APPEALS from judgments and an order of the circuit court for Milwaukee County: DENNIS R. CIMPL and MICHELLE ACKERMAN HAVAS, Judges. *Affirmed*.

Before Brash, P.J., Dugan and White, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM. Willie M. McBride appeals his judgments of conviction entered after he pled guilty to several charges under a global plea agreement for two separate cases.  He also appeals the order denying his postconviction motion.  McBride argues that he is entitled to withdraw his pleas because one of his cases should have been dismissed due to a violation of his right to a speedy trial.  He further asserts that plea withdrawal is warranted because his trial counsel was ineffective for failing to request separate sentencing hearings for the two cases and for not requesting a presentence investigation (PSI) report.

¶2     Additionally, McBride argues that the trial court[1] relied on improper factors in sentencing him in both cases at the same time, and he is seeking sentence modification.  He also contends that the court erroneously exercised its sentencing discretion in not making McBride eligible for the Challenge Incarceration Program (CIP).  Furthermore, McBride asserts that he is entitled to sentence credit for the time he was incarcerated on a third case for which he was acquitted.

¶3     The postconviction court denied McBride's postconviction motion in its entirety, without a hearing, stating that all of his claims were without merit.  We agree and, therefore, affirm.

## BACKGROUND

¶4     The charges against McBride stem from incidents that occurred in March 2018.  In the first incident, C.J.R. left a bar on South 2nd Street in Milwaukee shortly after midnight on March 21, 2018, and entered the backseat of a car that pulled up next to him, believing that it was his Uber ride.  The driver confirmed he

---

[1] McBride's pleas were taken and his sentence was imposed by the Honorable Dennis R. Cimpl; we refer to him as the trial court.  McBride's postconviction motion was decided by the Honorable Michelle Ackerman Havas; we refer to her as the postconviction court.

was with Uber, but C.J.R. noticed that there was another male in the front seat. The driver turned down a side road, stopped the vehicle, and ordered C.J.R. to get out of the car.

¶5 One of the men then ordered C.J.R. to give them "everything he had." C.J.R. gave them his wallet and his cell phone. The men also demanded C.J.R. give them his watch; he asked to keep it because it had "sentimental value," but one of the men punched him in the face, knocking him to the ground, and "ripped" the watch from his wrist. The men then got back into the vehicle and drove away. C.J.R. reported the robbery to the Milwaukee Police Department.

¶6 The second incident occurred on March 24, 2018, in West Allis. Officers from the West Allis Police Department were investigating a report of a subject with a gun when they observed a silver Pontiac Vibe—which matched the description of the vehicle involved, as provided by the person who had called in the complaint—in a parking lot with its engine running. The vehicle appeared unoccupied; the officers ran the license plate and discovered it was stolen. The officers then approached the vehicle and observed a Black male, later identified as McBride, laying on the backseat. McBride then jumped into the driver's seat and attempted to flee, striking a police squad several times as well as another parked car. One of the officers smashed the driver's side window and grabbed McBride's arm, but had to let go to avoid being struck by the vehicle, and McBride was able to flee the parking lot at a high rate of speed.

¶7 The officers subsequently interviewed the person who had called with the gun complaint, and that person was able to provide them with McBride's name. The officers then identified McBride from a photograph as the person who fled the parking lot in the silver Pontiac.

¶8 The Pontiac was found by the police a short time later, abandoned with significant damage. A cell phone was recovered from the vehicle which contained several photos of McBride. Officers were also able to obtain DNA samples from the steering wheel, gear shift, and inside door handle, which were later determined to match McBride's DNA.

¶9 A detective investigating that incident in West Allis subsequently called the Milwaukee Police Department to share information discovered in his investigation of McBride. The West Allis detective had found a receipt from a pawn shop for a Bulova watch that was pawned on April 11, 2018. McBride was identified in a surveillance video from the pawn shop as the person who pawned the watch, and C.J.R. identified the pawned watch as the one that was stolen from him.

¶10 The police in West Allis had also searched McBride's cell phone and discovered text messages he had sent to his girlfriend on the night C.J.R. was robbed. In the texts, McBride told her that a "White dude" who was "drunk" had gotten into his car because "he believed it was a cab," and that McBride was going to rob him.

¶11 Thus, for the first incident McBride was charged with robbery with the use of force as a party to a crime, with a habitual criminality repeater enhancer. He was also charged with felony bail jumping because at the time of the robbery of C.J.R., McBride was out on bond in another unrelated felony case, with the condition that he was not to commit any new crimes.

¶12 For the second incident, McBride was charged with five counts: operating a vehicle without the owner's consent, fleeing an officer causing damage to property, resisting an officer causing soft tissue damage to the officer,

4

second-degree recklessly endangering safety, and felony bail jumping, all with a habitual criminality repeater enhancer.

¶13    The complaint for the first incident was filed on July 27, 2018. At that time, McBride was in custody on an unrelated charge in a separate case that is not at issue here. On August 20, 2018, McBride demanded a speedy trial for the case relating to the first incident, pursuant to WIS. STAT. § 971.10 (2019-20).[2] The State asked for a continuance on October 24, 2018, due to a delay in obtaining evidence from McBride's cell phone carrier. McBride moved to dismiss the case, but the trial court determined that a continuance was appropriate because the defense had previous notice that this evidence was being sought, and the State had been working diligently to obtain it. However, because the trial date had to be adjourned outside of the statutory time frame for meeting a speedy trial demand, the court amended McBride's cash bail to a personal recognizance bond, in accordance with § 971.10(4).

¶14    The complaint relating to the second incident was filed on October 22, 2018. The cases were not joined; however, the State and McBride subsequently reached a global plea agreement in February 2019 for both cases. Pursuant to that plea agreement, McBride pled guilty to the felony bail jumping charge from the first incident, and with regard to the second incident, he pled guilty to the charges of fleeing an officer causing damage to property, resisting an officer causing soft tissue injury to the officer, and second-degree recklessly endangering safety. Additionally, the habitual criminality repeater enhancers were removed from those charges. The other charges were dismissed but read in at sentencing.

---

[2] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

¶15 McBride was sentenced in both cases in March 2019. The trial court imposed a global sentence of six years of initial confinement and five years of extended supervision. The court did not grant McBride eligibility for the CIP. Additionally, the court noted that McBride would receive a sentence credit of 232 days.

¶16 McBride filed a postconviction motion in February 2020 seeking to withdraw his pleas. He argued that the first case should have been dismissed when the State was unable to comply with his speedy trial request. He also asserted that his trial counsel was ineffective for failing to request that the cases be sentenced separately, and for failing to request a PSI report, which he claimed would have provided more details about his background and his efforts to support his family, and he contended that such information could have persuaded the trial court to impose a more favorable sentence.

¶17 The postconviction court rejected these claims. It found that the trial court had properly exercised its discretion in determining that dismissal was not warranted under the speedy trial statute. The postconviction court also found that there was no prejudicial effect in sentencing the cases together because the trial court is obligated to consider all information available regarding a defendant's conduct and behavior when imposing a sentence. Furthermore, the postconviction court observed that there is no basis in law to request separate sentencing hearings in this matter and, as such, any motion by trial counsel would have been denied. The postconviction court also noted that a PSI report is not a requirement, and even if one had been ordered, "[g]iven the various factors the [trial] court considered in its sentencing decision, there is no reasonable probability that additional information about [McBride's] family background would have made a difference" in the sentence that was imposed.

6

¶18    Additionally, McBride requested an additional 105 days of sentence credit in his postconviction motion.  This request was also denied after the postconviction court pointed out that McBride's calculations included time he was in custody on the unrelated charge, and thus should not be included.  Furthermore, the postconviction court determined that the sentence credit of 147 days reflected in the judgment of conviction in one of the underlying cases here was duplicative, in that it was already reflected in the sentence credit granted in the other underlying case.  Moreover, the postconviction court's calculations showed that McBride's total sentence credit should have been 228 days, as opposed to 232 days, based on his time in custody for the underlying cases.  Therefore, the postconviction court ordered that McBride's sentence credit be amended to a total of 228 days.

¶19    In short, the postconviction court denied McBride's motion in its entirety, without a hearing.  This appeal follows.

## DISCUSSION

*Right to a Speedy Trial*

¶20    McBride first argues that he is entitled to withdraw his pleas because the case relating to the first incident should have been dismissed by the trial court after his right to a speedy trial was violated.  A defendant seeking to withdraw his or her plea after sentencing "must prove, by clear and convincing evidence, that a refusal to allow withdrawal of the plea would result in 'manifest injustice.'"  **State**

7

*v. Brown*, 2006 WI 100, ¶18, 293 Wis. 2d 594, 716 N.W.2d 906 (citation omitted). McBride asserts that this error constitutes a manifest injustice.[3]

¶21    There is both a constitutional and a statutory right to a speedy trial. With regard to the constitutional right, "[b]oth the Sixth Amendment to the United States Constitution and article I, section 7 of the Wisconsin Constitution guarantee an accused the right to a speedy trial." *State v. Urdahl*, 2005 WI App 191, ¶11, 286 Wis. 2d 476, 704 N.W.2d 324.   Whether a defendant has been denied his constitutional right to a speedy trial is a question of law that we review *de novo*. *See id.*, ¶10.  However, the findings of fact made by the trial court will be upheld unless they are clearly erroneous. *Id.*

¶22    To make the determination of whether the right to a speedy trial has been violated, courts use a "four-part balancing test" established in *Barker v. Wingo*, 407 U.S. 514 (1972). *See Urdahl*, 286 Wis. 2d 476, ¶11.  This test "weighs the conduct of the prosecution and the defense and balances the right to bring the defendant to justice against the defendant's right to have that done speedily." *Id.* However, the right to a speedy trial "is not subject to bright-line determinations and must be considered based on the totality of circumstances that exist in the specific case." *Id.*

¶23    The first *Barker* factor is "the length of the delay," which is also the "triggering mechanism used to determine whether the delay is presumptively

---

[3] A manifest injustice is shown "[w]hen a defendant establishes a denial of a *relevant* constitutional right[.]" *State v. Bangert*, 131 Wis. 2d 246, 283, 389 N.W.2d 12 (1986) (emphasis added).  Such relevant constitutional rights have generally been recognized as those relating to the taking of a plea by the trial court or ineffective assistance of counsel, although our supreme court has noted that this is a "non-exhaustive list of situations" where a manifest injustice may occur. *See State v. Cain*, 2012 WI 68, ¶26 & n.6, 342 Wis. 2d 1, 816 N.W.2d 177.  Because we conclude that McBride's right to a speedy trial was not violated, we make no determination as to whether such a violation would constitute a manifest injustice as it relates to plea withdrawal.

prejudicial." *Urdahl*, 286 Wis. 2d 476, ¶12. "Generally, a post-accusation delay approaching one year is considered to be presumptively prejudicial." *Id.* Furthermore, "[i]t is only necessary to inquire into the other *Barker* factors when a delay is presumptively prejudicial." *State v. Provost*, 2020 WI App 21, ¶27, 392 Wis. 2d 262, 944 N.W.2d 23.

¶24    In this case, the delay was well under one year:  McBride's speedy trial demand was made on August 20, 2018; the State moved for a continuance on October 24, 2018; and the jury trial was rescheduled for February 25, 2019, although his plea was taken February 14, 2019.  Thus, the total time frame of these proceedings was approximately six months.  As a result, because this is no where near the presumptively prejudicial time frame of one year, *see Urdahl*, 286 Wis. 2d 476, ¶12, we conclude that McBride has not established that his constitutional right to a speedy trial was violated, and we will not discuss the *Barker* factors further, *see Provost*, 392 Wis. 2d 262, ¶27.

¶25    With regard to the statutory right to a speedy trial, WIS. STAT. § 971.10(2)(a) provides that "[t]he trial of a defendant charged with a felony shall commence within 90 days from the date trial is demanded[.]"  Here, the trial court granted the State's motion for a continuance and adjourned the trial date such that it was outside of the ninety-day time frame.  The court acknowledged this issue and resolved it by amending McBride's cash bail to a personal recognizance bond, in accordance with § 971.10(4).

¶26    McBride argues that WIS. STAT. § 971.10(3)(c) prohibits the trial court from granting a continuance due to the "lack of diligent preparation" by the State.  However, the trial court specifically stated that the State had in fact been working diligently to obtain the cell phone evidence, noting the time involved in

9

obtaining such information from a "large cellular carrier[]" that is located out of state, and that the State had "been on top of this, but for whatever reason it didn't come through." We find nothing in the record to indicate that this finding is clearly erroneous. *See Urdahl*, 286 Wis. 2d 476, ¶10. Therefore, because the trial court acted in accordance with the provisions of § 971.10, we conclude that McBride has not established that his statutory right to a speedy trial was violated, either. *See Urdahl*, 286 Wis. 2d 476, ¶10.

¶27 In other words, the trial court did not err in denying McBride's motion to dismiss the case that was subject to his speedy trial demand, and thus McBride's claim regarding this issue in his postconviction motion was properly rejected by the postconviction court.

*Ineffective Assistance of Counsel*

¶28 McBride next argues that he is entitled to withdraw his pleas because his trial counsel was ineffective. Proving ineffective assistance of counsel is one way to establish a manifest injustice. *State v. Taylor*, 2013 WI 34, ¶49, 347 Wis. 2d 30, 829 N.W.2d 482.

¶29 To prove ineffective assistance of counsel, a defendant must show that his trial counsel's performance was deficient and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "To prove constitutional deficiency, the defendant must establish that counsel's conduct falls below an objective standard of reasonableness." *State v. Love*, 2005 WI 116, ¶30, 284 Wis. 2d 111, 700 N.W.2d 62. "To prove constitutional prejudice, the defendant must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the

outcome.'" *Id.* (citations and one set of quotation marks omitted). The defendant "must prevail on both parts of the test to be afforded relief." *State v. Allen*, 2004 WI 106, ¶26, 274 Wis. 2d 568, 682 N.W.2d 433.

¶30 We review *de novo* "'the legal questions of whether deficient performance has been established and whether it led to prejudice rising to a level undermining the reliability of the proceeding.'" *State v. Roberson*, 2006 WI 80, ¶24, 292 Wis. 2d 280, 717 N.W.2d 111 (citation omitted). However, "[a] court need not address both components of this inquiry if the defendant does not make a sufficient showing on one." *State v. Smith*, 2003 WI App 234, ¶15, 268 Wis. 2d 138, 671 N.W.2d 854.

¶31 A claim of ineffective assistance of counsel requires that a postconviction evidentiary hearing be held "to preserve the testimony of trial counsel." *State v. Machner*, 92 Wis. 2d 797, 804, 285 N.W.2d 905 (Ct. App. 1979). However, a defendant is not automatically entitled to an evidentiary hearing relating to his or her postconviction motion. *State v. Bentley*, 201 Wis. 2d 303, 309, 548 N.W.2d 50 (1996). Rather, the trial court is required to hold an evidentiary hearing only if the defendant has alleged "sufficient material facts that, if true, would entitle the defendant to relief." *Allen*, 274 Wis. 2d 568, ¶14. This is a question of law that we review *de novo*. *Id.*, ¶9.

¶32 If, on the other hand, the postconviction motion "does not raise facts sufficient to entitle the movant to relief, or presents only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief," the trial court, in its discretion, may either grant or deny a hearing. *Id.* We will uphold such a discretionary decision if the trial court "has examined the relevant

11

facts, applied the proper legal standards, and engaged in a rational decision-making process." *Bentley*, 201 Wis. 2d at 318.

¶33   McBride first argues that his trial counsel was ineffective for failing to request separate sentencing hearings for his two cases. He asserts that the trial court considered "irrelevant facts" in each case since both cases were sentenced together. However, when imposing sentence, a trial court may consider all "relevant information concerning a defendant's life and characteristics." *State v. Frey*, 2012 WI 99, ¶45, 343 Wis. 2d 358, 817 N.W.2d 436. This includes "not only 'uncharged and unproven offenses' but also 'facts related to offenses for which the defendant has been acquitted.'" *Id.*, ¶47 (citation omitted). Based on this established standard, trial counsel had no legal basis for requesting separate sentencing hearings, and therefore was not deficient for failing to do so. *See State v. Allen*, 2017 WI 7, ¶46, 373 Wis. 2d 98, 890 N.W.2d 245 ("It is well[]established that trial counsel could not have been ineffective for failing to make meritless arguments."). Thus, this claim fails.

¶34   McBride also argues that his trial counsel was ineffective for failing to request a PSI report prior to sentencing. However, a PSI report "is not required and the decision to order one is discretionary." *State v. Jackson*, 187 Wis. 2d 431, 439, 523 N.W.2d 126 (Ct. App. 1994). Still, McBride asserts that a PSI report "would have highlighted McBride's efforts to support his family and his family's need for his support in more detail."

¶35   Yet, as the postconviction court pointed out, a PSI report "can include both positive *and negative* information about a defendant." McBride has not alleged that a PSI report would not have included information that would have made a negative impact on his sentence. Additionally, McBride has not alleged that a PSI

report would have included information that was not already before the trial court at sentencing—the record demonstrates that trial counsel discussed McBride's role in supporting his family at the sentencing hearing.

¶36    To be entitled to a *Machner* hearing for an ineffective assistance of counsel claim, the postconviction motion "must include facts that 'allow the reviewing court to meaningfully assess [the defendant's] claim.'" *Allen*, 274 Wis. 2d 568, ¶21 (brackets in *Allen*). In other words, the motion must include a "factual basis" that supports the assertions in the motion. *Id.* In contrast, McBride's motion with regard to the PSI report issue is completely conclusory, and is thus insufficient to require that a hearing be granted. *Id.*, ¶9.

¶37    Therefore, we conclude that the postconviction court did not err in denying McBride's request for a *Machner* hearing regarding his claim of ineffective assistance of counsel. *See Allen*, 274 Wis. 2d 568, ¶9.

*Sentencing Issues*

¶38    McBride makes several claims with regard to his sentence. First, he argues that he is entitled to sentence modification because the trial court relied on "improper sentencing factors" when it sentenced McBride in both cases during the same sentencing hearing. This argument is, in effect, a repackaging of his argument asserting ineffective assistance based on his trial counsel's failure to request separate sentencing hearings, which we determined was without merit.

¶39    Furthermore, our review of a sentencing decision is "limited to determining if discretion was erroneously exercised." *See State v. Harris*, 2010 WI 79, ¶30, 326 Wis. 2d 685, 786 N.W.2d 409 (citation omitted). We have already stated that it is well within the trial court's sentencing discretion to consider all

"relevant information concerning a defendant's life and characteristics." *See Frey*, 343 Wis. 2d 358, ¶45. Therefore, this version of McBride's claim regarding the sentencing of his cases together is also without merit.

¶40    Additionally, McBride attempts to argue that because the cases were not joined pursuant to WIS. STAT. § 971.12(4), they should not have been sentenced together. However, he provides no legal authority for this premise. We therefore will not consider this argument. *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) ("Arguments unsupported by references to legal authority will not be considered.").

¶41    The next sentencing issue argued by McBride is that the trial court erred in denying him eligibility for the CIP. He asserts that this was a misuse of the court's discretion because he meets most of the statutory requirements for the program.

¶42    Indeed, the determination for eligibility for the CIP is within the trial court's discretion when imposing sentence. *State v. Steele*, 2001 WI App 160, ¶8, 246 Wis. 2d 744, 632 N.W.2d 112. In fact, even if a defendant meets all of the statutory requirements for the CIP, the trial court still has the discretion to declare the defendant ineligible. *Id.*

¶43    "A trial court misuses its discretion when it fails to state the relevant and material factors that influenced its decision, relies on immaterial factors, or gives too much weight to one factor in the face of other contravening factors." *Id.*, ¶10. Here, the trial court stated that McBride would not be eligible for the CIP "due to [his] record and due to the violent nature of these crimes." The record supports this statement, and there is no indication that the decision was inappropriate based on the sentencing factors that were considered. *See id.* Therefore, we conclude that

14

the trial court did not erroneously exercise its discretion in denying McBride eligibility for the CIP.

¶44 Finally, McBride argues that he should be granted 108 days of credit on his sentence, in addition to the 228 days calculated by the postconviction court. This requested credit is based on time that McBride was in custody for the unrelated case, in which he was subsequently acquitted. McBride asserts that "[f]or reasons of equity," he should be granted a sentence credit in the cases underlying this appeal for that time.

¶45 "[A] factual connection between the sentence imposed and the custody that preceded it is required for sentence credit." *State v. Harrison*, 2020 WI 35, ¶44, 391 Wis. 2d 161, 942 N.W.2d 310. There is no such factual connection between the cases underlying this appeal and the case for which McBride is seeking the additional sentence credit. Furthermore, his "equity" reasoning is not sufficient to overcome this requirement, as "'a procedural or other tangential connection will not suffice.'" *See id.* (citations omitted). Therefore, this argument fails.

¶46 Accordingly, we affirm McBride's judgments of conviction as well as the order denying his postconviction motion without a hearing.

*By the Court.*—Judgments and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.